[No. C046576. Third Dist. Feb. 3, 2005.]

THE PEOPLE, Plaintiff and Respondent, v.
MARC EVAN O'DELL, Defendant and Appellant.

564

COUNSEL

Paul Bernstein, under appointment by the Court of Appeal, for Defendant and Appellant.

Bill Lockyer, Attorney General, Robert R. Anderson, Chief Assistant Attorney General, Mary Jo Graves, Assistant Attorney General, Stan Cross and Daniel Bernstein, Deputy Attorneys General, for Plaintiff and Respondent.

OPINION

**BLEASE, Acting P. J.**—After defendant Marc Evan O'Dell was found incompetent to stand trial, the court set his maximum term of confinement in a state hospital at three years pursuant to Penal Code section 1370, subdivision (c)(1).[1] In a subsequent proceeding the court issued an order authorizing Napa State Hospital (hospital) to involuntarily administer antipsychotic medication to him.

Defendant appeals, claiming:[2] (1) there was no substantial evidence to support the authorization to involuntarily administer antipsychotic medication to him; (2) the court erred in calculating his maximum term of confinement; and (3) his trial counsel rendered ineffective assistance by failing to seek correction of the maximum term of confinement and by submitting on the hospital's request to involuntarily medicate him without consulting with him.

We shall vacate the order authorizing the hospital to involuntarily medicate defendant.

PROCEDURAL BACKGROUND

Defendant was charged with seven felony counts including first degree residential burglary (§ 459), corporal injury to a cohabitant (§ 273.5,

---

[1] Undesignated statutory references are to the Penal Code.

[2] We do not consider whether this order, which was entered after defendant was found incompetent to stand trial, is appealable as an order affecting the substantial rights of a party within the meaning of section 1237, subdivision (b). Under the current law, an order allowing for the involuntary medication of defendant must be made prior to the making of the order directing that defendant be confined in a hospital, other treatment facility, or on outpatient status. (§ 1370, subd. (a)(1)(F)(2).) During the time defendant is confined in the hospital, other treatment facility, or on outpatient status, either the defendant or the People may request court review of the order. (§ 1370, subd. (a)(1)(F)(2)(B)(v).)

subd. (a)), battery with serious bodily injury (§ 243, subd. (d)), assault with a deadly weapon by means likely to produce great bodily injury (§ 245, subd. (a)(1)), intimidating a witness (§ 137, subd. (b)), threatening a witness (§ 140, subd. (a)), and criminal threats (§ 422).

After defendant pleaded not guilty, trial counsel expressed a doubt that defendant had the ability to assist him. The court found defendant incompetent to stand trial pursuant to section 1368, set his maximum term of confinement and imprisonment at 15 years and eight months, the maximum term of imprisonment for the offense charged, and on March 4, 2003, ordered defendant placed at Atascadero State Hospital until his mental capacity was restored.

On October 30, 2003, defendant was transferred to Napa State Hospital. In a letter dated December 17, 2003, the medical director, staff psychologist, and staff psychiatrist requested that the court issue an order authorizing the hospital to administer antipsychotic medications, including mood stabilizers, antidepressants, and anxiolytics, to defendant without his consent pursuant to *Sell v. United States* (2003) 539 U.S. 166 [156 L.Ed.2d 197, 123 S.Ct. 2174] (*Sell*).

The letter explained that since defendant had been admitted to the hospital, he had grown increasingly hostile toward staff who he believed was mistreating him. He did not cooperate with treatment, made unrealistic demands of staff, filed complaints, isolated himself in his room, was "frequently pressured in speech," was verbally abusive to staff, had not made any progress toward regaining his competence, and had initiated a hunger strike. The hospital diagnosed him with bipolar disorder.

The hospital opined that administering antipsychotic medication to defendant was medically appropriate, i.e., in his medical interest in light of his medical condition, including consideration of the specific types of proposed antipsychotic medication and its side effects. It further opined that antipsychotic medication was substantially likely to render defendant competent to stand trial and was unlikely to have side effects that would significantly interfere with his ability to assist in his defense at trial. There were no alternatives that were likely to achieve the same results. Therefore, the hospital recommended the court issue an order authorizing it to administer antipsychotic medications to defendant without his consent.

On January 21, 2004, the court held a hearing on the hospital's request. The court and the People believed the hospital did not need permission to involuntarily medicate defendant. Defense counsel argued that the hospital could not forcibly administer medication without court approval. The court then authorized the hospital to administer psychotropic medication to defendant "to the extent it has jurisdiction to do so."

On February 20, 2004, the court filed findings of fact and the order regarding the administration of antipsychotic medication. It found: (1) important governmental interests in bringing defendant to trial given the charges against him and the People's right to have a speedy and public resolution of these charges; (2) the administration of antipsychotic medication was substantially likely to render defendant competent to stand trial and was unlikely to have side effects that would significantly interfere with his ability to assist in his defense at trial; (3) the hospital had considered less intrusive treatments and they were unlikely to achieve substantially the same results and the court had considered less intrusive options (a direct order backed by the contempt power) but they would be ineffective as defendant was already involuntarily confined; and (4) the administration of antipsychotic medication was medically appropriate and in defendant's best interests.

On September 8, 2004, the trial court issued a minute order clarifying defendant's maximum term of confinement in the state hospital was three years and that his potential period of incarceration for his various offenses was 15 years and eight months.

## DISCUSSION

### I.

■ A defendant found mentally incompetent to stand trial must be committed to a state hospital for the care and treatment of the mentally disordered, to another treatment facility, or placed on outpatient status. (§ 1370, subd. (a)(1)(B)(i).)

■ The treatment the hospital can administer is not without constitutional limits. An individual has a constitutionally protected liberty interest in avoiding the unwanted administration of antipsychotic medication under the due process clause of the Fourteenth Amendment. (*Washington v. Harper* (1990) 494 U.S. 210, 221 [108 L.Ed.2d 178, 198, 110 S.Ct. 1028]; *Sell,*

*supra*, 539 U.S. at p. 178 [156 L.Ed.2d at p. 210]; see also *Riggins v. Nevada* (1992) 504 U.S. 127, 135 [118 L.Ed.2d 479, 489, 112 S.Ct. 1810] [involuntary administration of antipsychotic drugs on a prisoner or a detainee awaiting trial is impermissible "absent a finding of overriding justification and a determination of medical appropriateness"].)

■ "The significant due process liberty interest in avoiding mandatory administration of antipsychotic medication is grounded in two considerations." (*United States v. Williams* (2004) 356 F.3d 1045, 1053–1054, fn. omitted.) "First, the drugs 'tinker[] with the mental processes,' [citation]" and while they can eliminate undesirable behaviors, they also interfere with a person's autonomy and can impair his ability to function in certain contexts. (*Id.* at p. 1054.) Second, while antipsychotic medication has well-documented therapeutic benefits, the medication has serious, even fatal, side effects. (*Ibid.*)

■ In *Sell*, the Supreme Court held that the government could involuntarily medicate a mentally ill criminal defendant in order to render him competent to stand trial only if four factors are present: (1) *"important* governmental interests are at stake"; (2) involuntary medication will *"significantly further"* the concomitant state interests of timely prosecution and a fair trial; (3) "involuntary medication is *necessary* to further those interests"; and, (4) "administration of the drugs is *medically appropriate* . . . ." (*Sell, supra,* 539 U.S. at pp. 180–183 [156 L.Ed.2d at pp. 211–213].)

These factors do not apply when the antipsychotic medication is proposed for a different purpose, i.e., related to a defendant's dangerousness or to his own interests where refusal to take the medication puts his health gravely at risk. (*Sell, supra,* 539 U.S. at pp. 181–182 [156 L.Ed.2d at p. 213].) In this case, the *Sell* factors apply because the hospital requested permission to involuntarily medicate defendant to render him competent to stand trial.

■ Recently, the California Legislature amended Penal Code section 1370 to comply with the holding of *Sell.* (Stats. 2004, ch. 486, § 2.) Now, in a situation such as defendant's, the court can issue an order authorizing the hospital to involuntarily administer antipsychotic medication to defendant if the following five factors are present: (1) the People have charged defendant with a serious crime against the person or property; (2) involuntary administration of antipsychotic medication is substantially likely to render defendant competent to stand trial; (3) the medication is unlikely to have side effects

that interfere with defendant's ability to understand the nature of the criminal proceedings or assist counsel in conducting his defense in a reasonable manner; (4) less intrusive treatments are unlikely to have substantially the same results; and (5) antipsychotic medication is in defendant's best medical interest in light of his medical condition.[3] (§ 1370, subd. (a)(1)(F)(2)(B)(ii)(III).)

■ We review a trial court's order authorizing a state hospital to involuntarily administer antipsychotic medication to defendant for substantial evidence. (See *People v. Thomas* (1990) 217 Cal.App.3d 1034, 1037–1038 [266 Cal.Rptr. 295] [applying the substantial evidence test to two claims challenging the superior court's order to administer psychotropic drugs involuntarily to a prison inmate].)

■ First, we consider whether there was substantial evidence that *important* governmental interests were at stake. (*Sell, supra*, 539 U.S. at p. 180 [156 L.Ed.2d at pp. 211–212].) Section 1370, subdivision (a)(1)(F)(2)(B)(ii)(III) describes this factor in *Sell* simply as an inquiry into whether "The people have charged the defendant with a serious crime against the person or property . . . ." However, *Sell* explains that while the government has an important interest in bringing to trial an individual accused of a serious crime, the courts "must consider the facts of the individual case in evaluating the Government's interest in prosecution." (*Sell, supra*, 539 U.S. at p. 180 [156 L.Ed.2d at pp. 211–212].) Special circumstances may lessen the importance of that interest; for example, the defendant's failure to take drugs voluntarily may mean a lengthy confinement in an institution for the mentally ill, which would diminish the risks attached to freeing a defendant who has committed a serious crime without punishment. (*Ibid.*)

Here, the court did not consider the facts and any special circumstances of defendant's case, but rather, simply listed the crimes with which defendant was charged and concluded that the People had a right to a speedy and public

---

[3] The court reaches this inquiry only if defendant does not lack capacity to make decisions regarding antipsychotic medication and is not a danger to others, within the meaning of section 1370, subdivision (a)(1)(F)(2)(B)(ii)(I & II). (§ 1370, subd. (a)(1)(F)(2)(B)(iii).) Because the letter from the hospital requesting permission to involuntarily administer antipsychotic medication to defendant does not state defendant lacks capacity to made decisions regarding antipsychotic medication and does not allege facts showing he is a danger to others, within the meaning of the statute, we proceed to analyze the five factors in section 1370, subdivision (a)(1)(F)(2)(ii)(III).

resolution of these charges. Such a limited review of the governmental interests at stake provided insufficient evidence to satisfy the first factor in *Sell*.

■ Second, we consider whether there was substantial evidence that involuntarily medicating defendant would *significantly further* the concomitant governmental interests of timely prosecution and a fair trial. (*Sell, supra*, 539 U.S. at p. 181 [156 L.Ed.2d at p. 212].) This second factor in *Sell* corresponds to the second and third factors in section 1370, subdivision (a)(1)(F)(2)(B)(ii)(III). The court "must find that administration of the drugs is substantially likely to render the defendant competent to stand trial. At the same time, it must find that administration of the drugs is substantially unlikely to have side effects that will interfere significantly with the defendant's ability to assist counsel in conducting a trial defense, thereby rendering the trial unfair." (*Sell, supra*, 539 U.S. at p. 181 [156 L.Ed.2d at p. 212].)

Incredibly, the hospital never specified the condition it was proposing to treat[4] and never specified the actual antipsychotic medication it was proposing to administer[5] to defendant. Without this information, there was no evidence to support the hospital's opinion and the court's conclusion that administration of antipsychotic medication was substantially likely to render defendant competent to stand trial and that the medication was unlikely to have side effects that would significantly interfere with his ability to assist trial counsel.

■ Third, we consider whether there was substantial evidence that involuntarily medicating defendant was *necessary* to further the concomitant governmental interests of timely prosecution and a fair trial. This third factor in *Sell* corresponds to the fourth factor in section 1370, subdivision (a)(1)(F)(2)(B)(ii)(III). "The court must find that any alternative, less intrusive treatments are unlikely to achieve substantially the same results," and "must consider less intrusive means for administering the drugs, *e.g.*, a court order to the defendant backed by the contempt power . . . ." (*Sell, supra*, 539 U.S. at p. 181 [156 L.Ed.2d at p. 212].)

The hospital's letter simply asserted: "[T]here are no alternatives, less intrusive methods that are likely to achieve the same results." Based on this

---

[4] The hospital's letter stated that defendant suffered from bipolar disorder, but did not articulate it was proposing to treat this condition.

[5] The hospital's letter noted that antipsychotic medications are any drugs customarily used for the treatment of symptoms of psychoses and other severe mental and emotional disorders and include mood stabilizers, antidepressants, and anxiolytics.

statement, the court found that the hospital had considered less intrusive treatments and had found alternatives unlikely to achieve substantially the same result. The hospital's letter, unsubstantiated by facts relating to any alternatives, was insufficient evidence to support the court's finding. (See *Bushling v. Fremont Medical Center* (2004) 117 Cal.App.4th 493, 510 [11 Cal.Rptr.3d 653] [doctors' opinions, based on assumptions of fact that lack support, have no evidentiary value and do not assist the trier of fact]; *Griffith v. County of Los Angeles* (1968) 267 Cal.App.2d 837, 847 [73 Cal.Rptr. 773] [an expert's opinion cannot constitute substantial evidence if unsubstantiated by facts]; *Atiya v. Di Bartolo* (1976) 63 Cal.App.3d 121, 126 [133 Cal.Rptr. 611] [declarants' failure to lay a foundation for their opinions without the slightest factual basis constitutes insufficient evidence].)

 Fourth, and finally, we consider whether there was substantial evidence that administering defendant antipsychotic medication was in his best medical interest in light of his medical condition. This fourth factor in *Sell* corresponds to the fifth factor in section 1370, subdivision (a)(1)(F)(2)(B)(ii)(III). "The specific kinds of drugs at issue may matter here as elsewhere. Different kinds of antipsychotic drugs may produce different side effects and enjoy different levels of success." (*Sell, supra,* 539 U.S. at p. 181 [156 L.Ed.2d at p. 212].) As noted, the hospital never identified the antipsychotic medication it proposed to administer to defendant and the condition that medication would treat. Therefore, the court had no evidence before it to evaluate the appropriateness of the medication for defendant.

 We conclude, and the People concede, the evidence was wholly lacking for the court to authorize the hospital to administer antipsychotic drugs to defendant without his consent and, therefore, vacate the court's order.

## II.

Defendant contends the trial court erred in setting his term of confinement at 15 years and eight months, because the maximum he could be confined in the hospital was three years, pursuant to section 1370, subdivision (c)(1).[6]

---

[6] Section 1370, subdivision (c)(1) provides that a defendant who has not recovered mental competence must be returned to the committing court at the "shorter" of "three years from the date of commitment or a period of commitment equal to the maximum term of imprisonment provided by law for the most serious offense charged . . . ."

Defendant properly acknowledges that the court's September 2004 minute order clarified that defendant's maximum term of confinement is three years and his potential period of incarceration for the offenses is 15 years and eight months.

## III.

In light of our decision to vacate the order authorizing the involuntary administration of medication to defendant and the court's clarification of defendant's maximum term of confinement, we need not reach defendant's argument that his counsel rendered ineffective assistance in failing to seek correction of the maximum term of confinement and in deciding to submit on the medication request without consulting him.

## DISPOSITION

The order dated February 20, 2004, authorizing the hospital to involuntarily medicate defendant pursuant to its request, is vacated. The matter is remanded to the trial court with the following directions.

The court shall order the hospital in any future request from the hospital for an order to involuntarily medicate defendant to identify the medical condition it proposes to treat with the antipsychotic medication, the specific antipsychotic medication it proposes to administer, the likelihood the medication will render defendant competent to stand trial, the medication's side effects, and any alternative, less intrusive treatments.

In any hearing on such a request the court shall make specific findings of fact with respect to: (1) the important governmental interest at stake in bringing defendant to trial, considering the facts of defendant's case; (2) the manner in which the governmental interests of timely prosecution and a fair trial are furthered by the medication, i.e., whether involuntary medication is substantially likely to render defendant competent to stand trial and is unlikely to have side effects that interfere with defendant's ability to understand the nature of the criminal proceeding or assist counsel in the conduct of a defense in a reasonable manner; (3) the necessity of the specific medication to further those interests, i.e., whether less intrusive treatments are unlikely to

have substantially the same results; and (4) the appropriateness of the specific medication to serve defendant's best medical interest in light of his medical condition.

Morrison, J., and Hull, J., concurred.