[No. B182641. Second Dist., Div. Eight. July 27, 2006.]

ROBERT CARTER, Petitioner, v.
THE SUPERIOR COURT OF LOS ANGELES COUNTY, Respondent;
THE PEOPLE, Real Party in Interest.

Counsel

Michael P. Judge, Public Defender, Terry Shenkman and John Hamilton Scott, Deputy Public Defenders, for Petitioner.

No appearance for Respondent.

Steve Cooley, District Attorney, Lael Rubin and Patrick D. Moran, Deputy District Attorneys, for Real Party in Interest.

Opinion

RUBIN, Acting P. J.—

## INTRODUCTION

Robert Carter, a criminal defendant facing violent felony charges, was found incompetent to stand trial. The trial court then authorized a state hospital to administer antipsychotic drugs against his will in an effort to restore his competency. Under *Sell v. United States* (2003) 539 U.S. 166 [156 L.Ed.2d 197, 123 S.Ct. 2174] (*Sell*), orders of this sort are constitutionally permissible only if they satisfy strict criteria. Otherwise, an accused has a due process liberty interest that protects against being involuntarily medicated. We hold the trial court's order here did not meet the *Sell* criteria, nor did it comply with applicable California law. Accordingly, we grant the petition and direct the trial court to vacate its order.

## FACTUAL AND PROCEDURAL BACKGROUND

Petitioner was charged with rape, sexual battery, assault with a deadly weapon, and false imprisonment. At petitioner's arraignment, his counsel provided the trial court with a report from a psychiatrist, Dr. Jack Rothberg, that stated petitioner was incompetent to stand trial. The court then declared a doubt as to petitioner's competency, appointed Dr. Rothberg and Dr. Samuel I. Miles to examine petitioner, and suspended criminal proceedings. (See Pen. Code, § 1368; Evid. Code, § 730.)[1]

---

[1] All further statutory references are to the Penal Code.

Supplemental reports were submitted by both doctors. Dr. Rothberg again concluded petitioner was incompetent to stand trial. He wrote: "It is medically appropriate that [petitioner's] psychiatric condition be treated with medication. This anti-psychotic medication is likely to be effective. [Petitioner] lacks the capacity to make decisions about such medication, and he will have to be medicated involuntarily in all likelihood. If untreated with medication, he will suffer serious harm to his physical and mental health. [Petitioner] is suffering from schizophrenia and experiences numerous delusional ideas which impairs his thinking, his ability to interact with others and to function in an effective manner. He is highly paranoid and is very likely to deteriorate further in the absence of appropriate aggressive treatment with such medication." Dr. Rothberg further concluded, "Treatment with antipsychotic medication is very likely to render [petitioner] competent to stand trial. However, there are potential side effects. Such medications are listed in the NIMH publication 'Medications' and in the current edition of the Physician[s'] Desk Reference. Such medication is not likely to have side effects that would interfere with his ability to understand the nature of the criminal proceedings or to assist counsel in the conduct of a defense in a reasonable manner. . . . Less intrusive treatments are unlikely to have substantially the same results as medication."

Dr. Miles wrote in his report that petitioner exhibited "expansive mood and grandiose delusions, consistent with possible diagnoses of delusional disorder, schizoaffective disorder, and bipolar disorder with psychosis." He further stated, "Psychological testing may provide data to assist in the differential diagnosis. [¶] As a result of his mental disorder, he does not appear to appreciate the nature and purpose of proceedings against him. Thus, he does not appear to be competent at this time. [¶] If [petitioner] is suffering from bipolar disorder or schizoaffective disorder, medication may reduce symptomology to the point where he could become competent. . . . If his case is sufficiently important, as it appears to be, [in]voluntary administration of medication to restore competency would be reasonable if the diagnosis after psychological testing is one[] [w]hich responds to medication."

At the next hearing, petitioner's attorney argued the two doctor reports were insufficient to support involuntarily medicating petitioner. Counsel specifically noted neither report indicated a clear and specific diagnosis of petitioner's mental condition; the reports also failed to specify the medication that would be administered to petitioner, or the potential side effects. The trial court continued the hearing and ordered Drs. Rothberg and Miles to supplement their reports by completing the standard form "used in mental health

court Department 95 specifying data that appointed experts must provide when the court has declared a doubt about a defendant's competence to stand trial."

In response, Dr. Rothberg submitted a letter indicating his report already addressed all the pertinent *Sell* factors. Dr. Miles returned the court's mental health form. Dr. Miles answered "maybe" to the following questions: (1) whether it would be medically appropriate to treat petitioner with medication, (2) whether medication would be effective, (3) whether the medication would make petitioner competent to stand trial, and (4) whether if left untreated petitioner would suffer serious harm to his physical or mental health. He further stated petitioner did not have the capacity to make decisions about his medication and was not dangerous to others or to himself in his current setting. Dr. Miles indicated any potential side effects from "such medication" could be found in the Physicians' Desk Reference, and that "such medication" was unlikely to have side effects that interfere with petitioner's ability to understand the nature of the criminal proceedings or assist counsel in his defense. When asked whether less intrusive treatments were unlikely to have substantially the same results as medication, Dr. Miles responded by placing a question mark on the form.

Finally, Dr. Miles concluded, "If [petitioner] suffers from delusional disorder[,] medication is not likely to be effective. If he suffers from schizoaffective disorder or bipolar disorder with psychosis, it is likely to be effective. Further evaluation, including psychological testing[,] should be obtained to determine if medication is appropriate and likely to be effective."

At the competency hearing, petitioner's counsel again argued the reports submitted by Drs. Rothberg and Miles were insufficient under *Sell*. The court disagreed and specifically found "important governmental interests at stake. Involuntary medication [would] substantially and significantly further those state interests. . . . And administration of the drugs is medically appropriate in the patient's best medical interest." The court declared petitioner incompetent to stand trial under section 1368, committed him for treatment at Patton State Hospital for a period not to exceed nine years, and ordered that the hospital administer antipsychotic medication.

Petitioner filed a writ petition challenging the trial court's medication order and asking that the order be stayed pending our decision. Petitioner argued the evidence was insufficient to justify involuntary administration of antipsychotic drugs. We stayed the court's order and asked the People to file a response.

In keeping with its practice generally throughout the proceedings, the district attorney's office filed a letter brief in which it stated the People were not taking a position on the issue of involuntary medication. We issued an order indicating our intention to grant the petition and issue a peremptory writ of mandate in the first instance. (See *Palma v. U.S. Fasteners, Inc.* (1984) 36 Cal.3d 171 [203 Cal.Rptr. 626, 681 P.2d 893]; *Lewis v. Superior Court* (1999) 19 Cal.4th 1232 [82 Cal.Rptr.2d 85, 970 P.2d 872]; see also *Liberty Mutual Ins. Co. v. Superior Court* (1992) 10 Cal.App.4th 1282, 1290 [13 Cal.Rptr.2d 363].) Although we invited the People to file a formal response to the petition, they declined. We now grant the petition and order the trial court to vacate its order that petitioner be administered antipsychotic medication against his will.[2]

## DISCUSSION

### 1. *Constitutional and Statutory Law Pertaining to Involuntary Medication*

■ In a series of cases over the last 16 years, the United States Supreme Court has recognized that an individual has a constitutionally protected liberty interest under the due process clause of the Fourteenth Amendment to refuse administration of antipsychotic medication. In *Washington v. Harper* (1990) 494 U.S. 210 [108 L.Ed.2d 178, 110 S.Ct. 1028] (*Harper*), the court held convicted prisoners possess a significant liberty interest in avoiding the unwanted administration of antipsychotic drugs, and ruled that such drugs may be involuntarily administered only if the inmate is dangerous to himself or others and the treatment is in the inmate's medical interest. (*Id.* at p. 221.)[3] *Harper* involved a sentenced prisoner; the issue of competency to stand trial was not before the court. In *Riggins v. Nevada* (1992) 504 U.S. 127 [118 L.Ed.2d 479, 112 S.Ct. 1810] (*Riggins*), the court applied *Harper* to a criminal defendant facing trial. The court reversed a murder conviction after concluding (1) there was an insufficient factual showing to support the involuntary medication order, and (2) the defendant was likely prejudiced at trial because the antipsychotic drugs had an adverse effect on his demeanor and ability to testify. (*Id.* at p. 143.)

---

[2] While this writ proceeding was pending, petitioner's counsel informed us that the trial court had granted petitioner's motion to set aside the information pursuant to section 995. This development renders the petition moot. Nonetheless, we may retain and decide a case even when the particular controversy is technically moot if it concerns important issues of substantial and continuing public interest. (See *Abbott Ford, Inc. v. Superior Court* (1987) 43 Cal.3d 858, 868–869, fn. 8 [239 Cal.Rptr. 626, 741 P.2d 124].) We conclude this is such a case and have decided to issue this opinion in order to provide guidance in future cases.

[3] The trial court did not base its decision on the grounds petitioner was a danger to himself or others, or that the treatment was in his best medical interest. We do not address the issue of petitioner's dangerousness, and we discuss petitioner's best medical interest only briefly (see p. 1005, *post*).

The liberty interest recognized by the Supreme Court is grounded in two considerations. "First, the drugs 'tinker[] with the mental processes,' [citation], affecting cognition, concentration, behavior, and demeanor. While the resulting personality change is intended to, and often does, eliminate undesirable behaviors, that change also, if unwanted, interferes with a person's self-autonomy, and can impair his or her ability to function in particular contexts." (*U.S. v. Williams* (9th Cir. 2004) 356 F.3d 1045, 1054 (*Williams*), citing *Riggins, supra,* 504 U.S. at p. 137.) Second, " '[w]hile the therapeutic benefits of antipsychotic drugs are well documented, it is also true that the drugs can have serious, even fatal, side effects.' " (*Williams,* at p. 1054, quoting *Riggins,* at p. 134.)

█ The most recent iteration of the rule is found in *Sell.* There, the Supreme Court expanded on its *Harper* and *Riggins* precedents and held the government could involuntarily administer antipsychotic drugs on a mentally ill criminal defendant in order to render him competent to stand trial only if four factors were present: "(1) '*important* governmental interests are at stake'; (2) involuntary medication will '*significantly further*' the concomitant state interests of timely prosecution and a fair trial; (3) 'involuntary medication is *necessary* to further those interests'; and (4) 'administration of the drugs is *medically appropriate* . . . .' " (*People v. O'Dell* (2005) 126 Cal.App.4th 562, 569 [23 Cal.Rptr.3d 902] (*O'Dell*), quoting *Sell, supra,* 539 U.S. at pp. 180–183.) The court acknowledged that the question of involuntary medication to restore an accused's ability to stand trial is different from involuntarily medicating an inmate who is dangerous to himself or others when the refusal to take the medication puts his health gravely at risk. (*Sell,* at pp. 181–182.) The latter issue is not present here.

Although constitutionally permitted, orders for involuntary medication of antipsychotic drugs are disfavored and should be issued only on a compelling showing. (*U.S. v. Rivera-Guerrero* (9th Cir. 2005) 426 F.3d 1130, 1137–1138 (*Rivera-Guerrero*).) "[A] court that is asked to approve involuntary medication must be provided with a complete and reliable medically-informed record, based in part on independent medical evaluations, before it can reach a constitutionally balanced *Sell* determination." (*Id.* at p. 1137.) This includes " 'an independent and timely evaluation of the [defendant] by a medical professional, including attention to the type of drugs proposed, their dosage, and the expected duration of a person's exposure, as well as an opportunity for the [defendant] to challenge the evaluation and offer his or her own medical evidence in response.' " (*Id.* at p. 1142, quoting *Williams, supra,* 356 F.3d at p. 1056, italics omitted.)

■ Although California statutory law on the involuntary medication of criminal defendants predates *Sell*, after the Supreme Court issued its opinion, those statutes were amended to meet the constitutional standards. (*O'Dell*, *supra*, 126 Cal.App.4th at p. 569; see §§ 1370 [felonies], 1370.1 [misdemeanors].)[4] The trial court must conduct a hearing and may issue an order authorizing involuntary medication only if the following five factors are present: (1) the People have charged defendant with a serious crime against the person or property; (2) involuntary administration of antipsychotic medication is substantially likely to render defendant competent to stand trial; (3) the medication is unlikely to have side effects that interfere with defendant's ability to understand the nature of the criminal proceedings or assist counsel in conducting his defense in a reasonable manner; (4) less intrusive treatments are unlikely to have substantially the same results; and (5) antipsychotic medication is in defendant's best medical interest in light of his medical condition. (§ 1370, subd. (a)(2)(B)(ii); see *O'Dell*, *supra*, 126 Cal.App.4th at pp. 568–569.)

2. *The Involuntary Medication Order for Petitioner Was Not Supported by Substantial Evidence*

We review for substantial evidence orders authorizing a state hospital to administer antipsychotic medication involuntarily to a criminal defendant. (*O'Dell*, *supra*, 126 Cal.App.4th at p. 570.) We find the evidentiary showing insufficient.

---

[4] Subdivision (a)(2)(B) of section 1370, applicable here because petitioner was charged with felonies, provides, in relevant part: "The court shall hear and determine whether the defendant, with advice of his or her counsel, consents to the administration of antipsychotic medication, and shall proceed as follows: [¶] . . . [¶] (ii) If the defendant does not consent to the administration of medication, the court shall hear and determine whether any of the following is true: [¶] . . . [¶] (III) The people have charged the defendant with a serious crime against the person or property; involuntary administration of antipsychotic medication is substantially likely to render the defendant competent to stand trial; the medication is unlikely to have side effects that interfere with the defendant's ability to understand the nature of the criminal proceedings or to assist counsel in the conduct of a defense in a reasonable manner; less intrusive treatments are unlikely to have substantially the same results; and antipsychotic medication is in the patient's best medical interest in light of his or her medical condition. [¶] (iii) If the court finds any of the conditions described in clause (ii) to be true, the court shall issue an order authorizing the treatment facility to involuntarily administer antipsychotic medication to the defendant when and as prescribed by the defendant's treating psychiatrist. The court shall not order involuntary administration of psychotropic medication under subclause (III) of clause (ii) unless the court has first found that the defendant does not meet the criteria for involuntary administration of psychotropic medication under subclause[s (I), (II) of clause (ii) dealing with an inmate's overall mental health and where he or she is a danger to others]."

 *Sell* first requires us to consider whether there is substantial evidence in the record that important governmental interests were at stake. (*Sell, supra*, 539 U.S. at p. 180.) Section 1370, subdivision (a)(2)(B)(ii)(III) appears to "describe[] this factor in *Sell* simply as an inquiry into whether 'The people have charged the defendant with a serious crime against the person or property . . . .' However, *Sell* explains that while the government has an important interest in bringing to trial an individual accused of a serious crime, the courts 'must consider the facts of the individual case in evaluating the Government's interest in prosecution.' [*Sell, supra*, 539 U.S. at p. 180.] Special circumstances may lessen the importance of that interest; for example, the defendant's failure to take drugs voluntarily may mean a lengthy confinement in an institution for the mentally ill, which would diminish the risks attached to freeing a defendant who has committed a serious crime without punishment. [Citation.]" (*O'Dell, supra*, 126 Cal.App.4th at p. 570.)[5] Thus, our inquiry extends beyond whether the crimes charged involve serious offenses against persons or property.[6]

The only governmental interest identified by the trial court in the present case was "bringing the defendant to trial." This finding literally satisfies the first element under section 1370, and *Sell* acknowledges that it is an important consideration under the constitutional standard, but "[s]pecial circumstances may lessen the importance of that interest." (*Sell, supra*, 539 U.S. at p. 180.) Here, the court did not consider any facts or circumstances of the particular case before it. "Such a limited review of the governmental interests at stake [provides] insufficient evidence to satisfy the first factor in *Sell*." (*O'Dell, supra*, 126 Cal.App.4th at pp. 570–571.)

Remarkably, the prosecutor made no effort to claim there was *any* governmental interest that would be advanced by subjecting petitioner to involuntary antipsychotic medication. The prosecutor remained silent throughout the trial court proceedings and took no position on the issue of petitioner's mental competency or the appropriateness of involuntary medication. We asked the

---

[5] We note the first statutory factor does not literally require the trial court to consider "the important governmental interests at stake," as articulated in *Sell*. Although it is true that in most instances an important governmental interest will be implicated when the defendant is charged "with a serious crime against the person or property," we can imagine situations where that might not be the case. Therefore, to the extent a trial court bases its involuntary medication decision strictly upon the first factor under section 1370, subdivision (a)(2)(B)(ii)(III), without considering the broader question of the importance of the governmental interest, the order might not satisfy *Sell*'s constitutional standard.

[6] Obviously, here the crimes involve a serious and violent attack on a person and hence satisfy the statutory definition.

People to file a response to petitioner's writ petition and received a letter by which they continue to take no position on the issue of involuntary medication. Given that three of the four *Sell* factors require the consideration and balancing of "important governmental interests," it is difficult to conceive of a situation where the trial court will have a complete, fair, and reliable record upon which to make its involuntary medication determination without input from the government concerning its interests and how those interests may be affected.

Even if the brutal nature of the crimes alleged were themselves sufficient to satisfy the first constitutional and statutory elements, there was an insufficient showing of the existence of the other factors to uphold the court's order.

 *Sell* mandates substantial evidence that subjecting an accused to involuntary medication of antipsychotic drugs would significantly further the state interests of timely prosecution and a fair trial. (See *U.S. v. Evans* (4th Cir. 2005) 404 F.3d 227, 239–241, on remand 427 F.Supp.2d 696 [failure to identify specific antipsychotic medication or possible side effects precludes involuntary medication].) "This second factor in *Sell* corresponds to the second and third factors in section 1370, subdivision [(a)(2)(B)(ii)(III)]. The court 'must find that administration of the drugs is substantially likely to render the defendant competent to stand trial. At the same time, it must find that administration of the drugs is substantially unlikely to have side effects that will interfere significantly with the defendant's ability to assist counsel in conducting a trial defense, thereby rendering the trial unfair.' [Citation.]" (*O'Dell, supra,* 126 Cal.App.4th at p. 571, quoting *Sell, supra,* 539 U.S. at p. 181.)

The only evidence before the trial court regarding this element were the statements of Drs. Rothberg and Miles, and that testimony was conflicting. Dr. Rothberg opined that petitioner was suffering from schizophrenia and "numerous delusional ideas which impair[] his thinking." Dr. Miles concluded petitioner was suffering from either "a delusional disorder, schizoaffective disorder, or bipolar disorder with psychosis" and recommended psychological testing prior to a formal diagnosis.

The evidence regarding the actual medication petitioner should be given was nonexistent. Dr. Rothberg concluded petitioner should be treated with "antipsychotic medication" and that the medication would likely render him competent to stand trial. Dr. Miles conditioned the effectiveness of antipsychotic medication on petitioner's suffering from bipolar or schizoaffective disorder; medication would *not* be effective if petitioner had a delusional

disorder. In Dr. Miles's view, further evaluation and testing would be necessary to determine if involuntarily medicating petitioner would be appropriate and effective. Other than generally referring to "medication," neither psychiatrist specified which antipsychotic drugs petitioner should be prescribed. This deficiency underscores the constitutional failure. At a *Sell* hearing, "the [trial] court is required to consider specific drugs, their unique side effects, and their medical appropriateness. Specificity as to the medications to be administered is critical." (*Rivera-Guerrero, supra,* 426 F.3d at p. 1140.)

Evidence regarding the potential side effects of particular antipsychotic drugs is similarly absent. Neither Dr. Rothberg nor Dr. Miles articulated any side effects petitioner might reasonably experience if he was forcibly medicated. Their reports simply referred the court to certain general medical publications on the potential side effects of antipsychotic medications generally. These statements were not only unhelpful to the court, but they were wanting under *Sell.* Without specific information regarding the drugs to be given and possible side effects, there was no evidence to support the psychiatrists' opinions, or the court's conclusions, that involuntarily administering such medication was substantially likely to render petitioner competent to stand trial and would not interfere with his "ability to understand the nature of the criminal proceedings or to assist counsel in the conduct of a defense in a reasonable manner." (§ 1370, subd. (a)(2)(B)(ii)(III).)

*Sell* further requires that we consider whether there was substantial evidence that forcibly medicating petitioner was *necessary* to further the governmental interests of timely prosecution and a fair trial. "This third factor in *Sell* corresponds to the fourth factor in section 1370, subdivision [(a)(2)(B)(ii)(III)]. 'The court must find that any alternative, less intrusive treatments are unlikely to achieve substantially the same results,' and 'must consider less intrusive means for administering the drugs, *e.g.,* a court order to the defendant backed by the contempt power . . . .' [Citation.]" (*O'Dell, supra,* 126 Cal.App.4th at p. 571, quoting *Sell, supra,* 539 U.S. at p. 181.)

The only information provided by Dr. Rothberg concerning alternatives or less intrusive methods was his conclusory statement that "[l]ess intrusive treatments are unlikely to have substantially the same results as medication." Alternative treatments were not described, nor was there any explanation of

what results might be expected from such treatments or why those results, while perhaps not the "same," would not be sufficient to satisfy the government's interests. Dr. Miles did not give an opinion on this subject, placing a question mark where the form inquired about less intrusive treatments. In short, the evidence was insufficient to support the trial court's finding that involuntary medication was necessary to further governmental interests.[7]

The final *Sell* factor is that the administration of antipsychotic medication is in petitioner's best medical interests in light of his actual condition. "This fourth factor in *Sell* corresponds to the fifth factor in section 1370, subdivision [(a)(2)(B)(ii)(III)]. 'The specific kinds of drugs at issue may matter here as elsewhere. Different kinds of antipsychotic drugs may produce different side effects and enjoy different levels of success.' [Citation.]" (*O'Dell, supra,* 126 Cal.App.4th at p. 572, quoting *Sell, supra,* 539 U.S. at p. 181.) As we have already noted, neither medical expert identified the specific antipsychotic medications petitioner should be given or any potential side effects. Therefore, there was no evidence before the trial court upon which it could base its finding that involuntary administration of drugs was medically appropriate and in petitioner's best interests.

### 3. *Conclusion*

"The importance of the defendant's liberty interest, the powerful and permanent effects of anti-psychotic medications, and the strong possibility that a defendant's trial will be adversely affected by the drug's side-effects all counsel in favor of ensuring that an involuntary medication order is issued only after both sides have had a fair opportunity to present their case and develop a complete and reliable record." (*Rivera-Guerrero, supra,* 426 F.3d at p. 1138.)

■ Here, important government interests were not fully articulated and the record fell short of meeting the constitutional and statutory requirements. The order was, therefore, not supported by substantial evidence.

---

[7] The "standard form" that the mental health department of the Los Angeles Superior Court uses when it declares a doubt as to a criminal defendant's competency is not on its own likely to elicit sufficient information regarding the specific antipsychotic drugs that might be administered, the recommended dosage, and the potential side effects of such drugs. It does not ask for any detailed information regarding alternative and less intrusive treatments. Without a separate doctor's report or an addendum to the form, it is doubtful information on the form could satisfy the *Sell* criteria.

## DISPOSITION

The petition is granted. The trial court is ordered to (1) vacate its order authorizing petitioner to be involuntarily medicated; (2) if otherwise appropriate given the then-current status of the case, conduct a new hearing on the subject, at which hearing the parties shall be permitted to introduce additional evidence; and (3) determine whether, under the criteria established by *Sell* and section 1370, antipsychotic medication should be administered to petitioner involuntarily. Our previous stay order is dissolved.

Boland, J., and Flier, J., concurred.