[No. E048681. Fourth Dist., Div. Two. Dec. 10, 2010.]

THE PEOPLE, Plaintiff and Respondent, v.
JOHN THOMAS CHRISTIANA, Defendant and Appellant.

**[CERTIFIED FOR PARTIAL PUBLICATION\*]**

---

*Pursuant to California Rules of Court, rules 8.1105(b) and 8.1110, this opinion is certified for publication with the exception of part III.B.

**COUNSEL**

Marta I. Stanton, under appointment by the Court of Appeal, for Defendant and Appellant.

Edmund G. Brown, Jr., Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Gary W. Schons, Assistant Attorney General, Steve Oetting and Eric A. Swenson, Deputy Attorneys General, for Plaintiff and Respondent.

**OPINION**

**HOLLENHORST, Acting P. J.—**

### I. INTRODUCTION

Defendant John Thomas Christiana appeals from orders following special proceedings to determine competency (Pen. Code,[1] § 1368) and to authorize involuntary administration of psychotropic medication (§ 1370). He argues that (1) he had a constitutional right to testify at his competency hearing, and the denial of that right was reversible error; and (2) the trial court's authorization to involuntarily administer antipsychotic medication to him was not supported by substantial evidence. We reject the first contention but find merit to the second, and we reverse the order authorizing involuntary administration of antipsychotic medication.

### II. FACTS AND PROCEDURAL BACKGROUND

On September 30, 2008, defendant was charged in an amended complaint in case No. MICRF-08-46891-02 with unlawful taking of a vehicle (Veh. Code, § 10851, subd. (a); count 1); unlawful receipt of stolen property (§ 496, subd. (a); counts 2 and 4); grand theft (§ 487, subd. (d)(1); count 3); vandalism (§ 594, subd. (a)(1); count 5); unlawful possession of a concealed firearm (§ 12025, subd. (a)(1); count 6); and unlawful possession of a loaded

---

[1] All further statutory references are to the Penal Code unless otherwise specified.

firearm (§ 12031, subd. (a)(1); count 7). On April 10, 2009, defendant was charged in a complaint in case No. MBCRF-09-48188-02 with arson through the use of a device designed to accelerate the fire (§§ 451, subd. (c), 451.1; subd. (a)).

Meanwhile, on February 6, 2009, defense counsel expressed a doubt as to defendant's competence to stand trial. The trial court suspended criminal proceedings under section 1368 and appointed two experts, Drs. Veronica Thomas and Nicholas Dogris, both psychologists, to evaluate and report on his mental condition. Defendant retained a third expert, Dr. Gordon Plotkin, a psychiatrist, to do the same. Over defendant's objection, defense counsel waived a jury trial. The trial court conducted a hearing on April 16, 2009, at which the prosecutor and defense counsel stipulated, over defendant's objection, to submit on the bases of the reports of the three experts.

All three experts stated in their reports that defendant suffered from a serious mental illness. Dr. Thomas opined that defendant had a mental disorder, "likely a psychotic disorder such as paranoid schizophrenia or schizoaffective disorder." Dr. Dogris stated his opinion that defendant "meets the criteria for Paranoid Schizophrenia." Dr. Plotkin stated that "it appears that this is an endogenous illness, such as Schizophrenia, but one cannot rule out an organic illness related to head trauma, exposure to altitude,[2] or other intracranial or metabolic processes." Defendant told all three experts he had had a bicycle accident in 1979 that resulted in a head injury and loss of consciousness, and while he was in the hospital, the government had inserted a microchip in his head, which was used to control him. All three experts concluded that defendant was able to understand the nature and purpose of the criminal proceedings; however, Drs. Plotkin and Dogris expressed their opinions that defendant was incompetent to stand trial because his ability to assist counsel in conducting his defense in a rational manner was impaired. Dr. Thomas believed defendant's mental disorder did not preclude defendant from assisting his attorney in conducting a defense, and he was therefore competent to stand trial.

Following the hearing, the trial court found defendant had a mental disorder that affected his ability to assist defense counsel in a rational manner. However, on April 28, 2009, the trial court vacated the findings and orders it had made on April 16 and set the matter for a *Marsden*[3] hearing. The trial court held the *Marsden* hearing on May 5 and denied defendant's request for substitution of counsel.

---

[2] Defendant is apparently a world-class mountain climber.

[3] From *People v. Marsden* (1970) 2 Cal.3d 118 [84 Cal.Rptr. 156, 465 P.2d 44].

On May 12, 2009, the trial court continued the matter for a second competency hearing, and on June 9, the trial court conducted a second competency hearing for both cases. The parties again submitted on the bases of the experts' reports, over defendant's objection. Following the hearing, the trial court again found defendant was incompetent to stand trial. The trial court ordered the Inyo County mental health director to evaluate defendant and make a written recommendation as to whether he should be required to undergo treatment as an outpatient or at a treatment facility. On June 23, 2009, based on the recommendation of Dr. Jeanette Schneider, the trial court ordered that defendant be transferred to a state hospital. Defendant filed a notice of appeal from the trial court's order.

Defendant declared he would not take antipsychotic medication voluntarily. On August 6, 2009, the trial court held a hearing to determine whether defendant should be involuntarily medicated. At the hearing, the trial court took the telephonic testimony of Drs. Schneider and Plotkin, and defendant testified in his own behalf. Following the hearing, the trial court ordered the involuntary administration of psychotropic medication to defendant under section 1370, subdivision (a)(2)(B)(ii)(III).

On September 1, 2009, the trial court issued its commitment order and fixed the maximum term of confinement at three years. Defendant filed a notice of appeal from the order authorizing his involuntary medication.

Additional facts are set forth in the discussion of the issues to which they pertain.

## III. DISCUSSION

### A. *Appealability*

Defendant appeals from (1) the trial court's order determining him to be incompetent and committing him to a state hospital, and (2) the trial court's order authorizing involuntary administration of antipsychotic drugs. The People contend the orders appealed from are not appealable.

#### 1. *Order of Commitment to State Hospital*

■ Our Supreme Court has established that an order determining a defendant to be incompetent and committing him to a state hospital is appealable as a final judgment in a special proceeding. (*People v. Fields* (1965) 62 Cal.2d 538, 542 [42 Cal.Rptr. 833, 399 P.2d 369] (*Fields*).) The holding in *Fields* was based on Code of Civil Procedure former section 963, subdivision 1, which authorized an appeal "from a final judgment entered in a

special proceeding." (*Fields, supra*, at p. 540.) The currently applicable successor to this statute does not refer to special proceedings and merely authorizes an appeal "[f]rom a judgment." (Code Civ. Proc., § 904.1, subd. (a)(1).) However, the Supreme Court has held that "[t]he meaning is the same." (*Sullivan v. Delta Air Lines, Inc.* (1997) 15 Cal.4th 288, 304 [63 Cal.Rptr.2d 74, 935 P.2d 781].) Thus, this court unquestionably has jurisdiction to address defendant's challenge to the commitment order on direct appeal.

### 2. *Order Authorizing Involuntary Administration of Antipsychotic Drugs*

██ Section 1370 provides that during the defendant's confinement, either the defendant or the People may request court review of an order authorizing involuntary medication. (§ 1370, subd. (a)(2)(B)(v).) The People contend that, in the context of the statutory scheme, such review is to be conducted in the trial court. We note, however, that other provisions of the statute provide for regular periodic reviews in the trial court, and the People's interpretation of the statute would tend to render those more specific provisions surplusage. (§ 1370, subd. (b)(1)–(4).) Moreover, in *People v. O'Dell* (2005) 126 Cal.App.4th 562, 566 and footnote 2 [23 Cal.Rptr.3d 902] (*O'Dell*), the trial court relied on section 1370, subdivision (a)(2)(B)(v) as authority for considering an involuntary medication order on direct appeal.

Moreover, section 1237 authorizes a defendant to take an appeal "[f]rom any order made after judgment, affecting the substantial rights of the party." (§ 1237, subd. (b).) As noted above, the order authorizing involuntary administration of antipsychotic drugs under section 1370 was an order made after judgment in a special proceeding. (See *Fields, supra*, 62 Cal.2d at p. 542.) It logically follows, therefore, that the involuntary medication order was itself appealable. (See *O'Dell, supra*, 126 Cal.App.4th at p. 566 & fn. 2 [considering, on direct appeal, a challenge to an order under § 1370 without addressing whether the appeal was brought under § 1237]; see also *People v. McDuffie* (2006) 144 Cal.App.4th 880, 886 [50 Cal.Rptr.3d 794] (*McDuffie*) [similarly considering a challenge to an order under § 1370 on direct appeal]; cf. *Sell v. United States* (2003) 539 U.S. 166, 176 [156 L.Ed.2d 197, 123 S.Ct. 2174] (*Sell*) [holding that an order authorizing the involuntary administration of psychotropic drugs was appealable as a collateral order under federal law because such an order was " 'effectively unreviewable on appeal from a final judgment' "].)

The People further contend this court has no jurisdiction because defendant never challenged the medication order on the ground, now raised on appeal, that the evidence to support the medication order was insufficient because the

evidence did not identify the specific medication proposed to be administered or its specific side effects. To support their argument, the People cite section 1469, which is part of the title and chapter of the Penal Code addressing appeals in misdemeanor and infraction cases and is therefore, on its face, inapplicable. We presume the intended cite was to section 1259, which addresses appeals in felony cases in language similar to that of section 1469. Section 1259 states: "Upon an appeal taken by the defendant, the appellate court may, without exception having been taken in the trial court, review any question of law involved in any ruling, order, instruction, or thing whatsoever said or done at the trial or prior to or after judgment, which thing was said or done after objection made in and considered by the lower court, and which affected the substantial rights of the defendant." Here, defendant challenges the sufficiency of the evidence to support the trial court's order. It is axiomatic that such a challenge does not require that an objection was made in the trial court. (See *People v. Butler* (2003) 31 Cal.4th 1119, 1126–1128 [6 Cal.Rptr.3d 730, 79 P.3d 1036].)

We conclude that we have jurisdiction to consider defendant's claims in this appeal.

### B. *Defendant's Right to Testify**

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

### C. *Involuntary Medication*

#### 1. *Additional Factual Background*

At the August 6, 2009, hearing under section 1370, the trial court heard the telephonic testimony of Drs. Schneider and Plotkin, both psychiatrists, and considered Dr. Plotkin's written report.

Dr. Schneider testified that if antipsychotic medication were administered, it would be likely to render defendant competent to stand trial. She testified that approximately 70 percent of people treated with antipsychotic medications respond to those medications, and there was a 70 percent chance or more that he would be returned to competence by being medicated. She further testified that the medication would be unlikely to have side effects that would interfere with his ability to understand the nature of the criminal proceedings or to assist counsel in the conduct of his defense. In her opinion, there were no less intrusive treatments that would have the same result; antipsychotic medication or treatment would be in his best medical interests;

---

*See footnote, *ante*, page 1040.

and if he was not treated with antipsychotic medication, his condition would continue to deteriorate. As to defendant's specific medical condition, the doctor testified that she believed defendant "has a psychiatric illness that involves psychotic symptomatology, thus rendering him delusional," and was "most consistent with the diagnosis of schizophrenia." She did not, however, identify the specific medication that was proposed to be used.

Dr. Plotkin testified that administration of antipsychotic medication had a 75 percent likelihood of returning defendant to competence to stand trial. In his opinion, antipsychotic medication was unlikely to have side effects that would render defendant incompetent to stand trial or would adversely affect his ability to understand the proceedings or to assist counsel in the conduct of a defense. In Dr. Plotkin's opinion, there were no less intrusive treatments that would have the same result, and more specifically, that traditional psychotherapy would not be an option.

As to defendant's specific medical condition, Dr. Plotkin testified that defendant had a "psychotic disorder," but it was "difficult to tell exactly what the exact diagnosis is. It's either schizophrenia, of which there's a family history, or it's something a little more complicated, such as bipolar affect and disorder." Like Dr. Schneider, Dr. Plotkin did not identify the specific medication proposed to be used, and Dr. Plotkin did not testify whether the generic antipsychotic medication he described would be equally effective regardless of what defendant was diagnosed with. Dr. Plotkin did testify that the only way to ameliorate symptoms similar to defendant's was through antipsychotic medication "if they're not temporarily induced by some type of toxic element, like a drug or an exposure to a heavy metal or some other toxic compound." He further testified that defendant "hasn't been medicated yet, and his symptoms have gone on for a long period of time[,] [s]o he may be a little resistant to those medications initially."

Dr. Plotkin further testified that side effects were "a legitimate concern," and there "can be some extreme side effects on occasion," although regular monitoring would make that unlikely. He testified that some medications are "highly sedating," but that effect can be managed by changing the medication, changing the dose, or by getting acclimated to the medication. Another side effect is internal restlessness and jitteriness, and that can be controlled by changing medication. Finally, he described rarer side effects, including tardive dyskinesia (a movement disorder) and a fever state similar to anesthesia. Dr. Plotkin testified it would not be fair to say that side effects were extremely unlikely, but rather that side effects could be appropriately dealt with.

The trial court found that involuntary administration of antipsychotic medication was substantially likely to render defendant competent to stand

trial; such medication was unlikely to have side effects that would interfere with defendant's ability to understand the proceedings or to assist counsel in the conduct of a defense; such medication was "unlikely to have any serious adverse side effects that could not be controlled or ameliorated with professional supervision"; and that "less intrusive treatments [were] unlikely to have substantially the same results."

## 2. *Legal Basis for Involuntary Administration of Antipsychotic Drugs*

■ The United States Supreme Court has held that "an individual has a 'significant' constitutionally protected 'liberty interest' in 'avoiding the unwanted administration of antipsychotic drugs.' [Citation.]" (*Sell, supra,* 539 U.S. at p. 178.) To override that interest for the purpose of restoring a criminal defendant to competency to stand trial, due process requires the trial court to determine four factors:[4] "First, a court must find that *important* governmental interests are at stake." (*Sell,* at p. 180.) "Second, the court must conclude that involuntary medication will *significantly further* those concomitant state interests. It must find that administration of the drugs is substantially likely to render the defendant competent to stand trial. At the same time, it must find that administration of the drugs is substantially unlikely to have side effects that will interfere significantly with the defendant's ability to assist counsel in conducting a trial defense . . . . [Citation.]" (*Id.* at p. 181.) "Third, the court must conclude that involuntary medication is *necessary* to further those interests. The court must find that any alternative, less intrusive treatments are unlikely to achieve substantially the same results. . . ." (*Ibid.*) "Fourth, . . . the court must conclude that administration of the drugs is *medically appropriate, i. e.,* in the patient's best medical interest in light of his medical condition." (*Ibid.*; see also *O'Dell, supra,* 126 Cal.App.4th at p. 569.)

■ This state's statute authorizing involuntary treatment essentially tracks the *Sell* factors. (§ 1370, subd. (a)(2)(B)(iii); *O'Dell, supra,* 126 Cal.App.4th at p. 569.) Under section 1370, after a defendant has been found to be incompetent, the trial court must determine whether the defendant consents to the administration of antipsychotic medication. (§ 1370, subd. (a)(2)(B)(ii)(III).) If the defendant does not consent, the trial court may authorize "the treatment facility to involuntarily administer antipsychotic

---

[4] The *Sell* factors control only when the sole purpose of the involuntary medication is to render the defendant competent to stand trial; they do not control if involuntary medication is justified on other bases, such as when the defendant is dangerous to himself or others or when the refusal to take medication puts the defendant's own health at grave risk. (*Sell, supra,* 539 U.S. at pp. 181–182.) The People do not contend that involuntary medication is justified for those other purposes, and none of the medical experts expressed an opinion that those other purposes applied to defendant.

medication to the defendant when and as prescribed by the defendant's treating psychiatrist," if the court determines that "[t]he people have charged the defendant with a serious crime against the person or property; involuntary administration of antipsychotic medication is substantially likely to render the defendant competent to stand trial; the medication is unlikely to have side effects that interfere with the defendant's ability to understand the nature of the criminal proceedings or to assist counsel in the conduct of a defense in a reasonable manner; less intrusive treatments are unlikely to have substantially the same results; and antipsychotic medication is in the patient's best medical interest in light of his or her medical condition." (§ 1370, subd. (a)(2)(B)(iii), (ii)(III).)

### 3. *Standard of Review*

In *O'Dell*, the court applied a substantial evidence standard of review to the trial court's determination of all four *Sell* factors. (*O'Dell, supra*, 126 Cal.App.4th at p. 570.)

### 4. *First* Sell *Factor*

The first *Sell* factor involves an inquiry into whether the charged offense is a serious crime against person or property in light of the individual case. (See *Sell, supra*, 539 U.S. at p. 180.) In *O'Dell*, the court noted that as to the first factor, the trial court merely listed the crimes with which the defendant was charged, but more was required to satisfy that factor. (*O'Dell, supra*, 126 Cal.App.4th at pp. 570–571.)

Here, defendant was charged with, among other offenses, committing arson at a visitor center and adjacent forest land; the crime was committed in early September, around the height of Southern California's fire season. The charged offense was indisputably serious, and we agree that important government interests were indeed at stake sufficient to satisfy the first *Sell* factor.

### 5. *Second* Sell *Factor*

The second *Sell* factor requires the prosecution to produce substantial evidence that involuntarily medicating the defendant would significantly further the state interests of timely prosecution and a fair trial, which in turn requires showings that such medication is both substantially likely to render the defendant competent to stand trial and substantially unlikely to have side effects that would interfere significantly with the defendant's ability to assist counsel in conducting the defense. (*Sell, supra*, 539 U.S. at p. 181.)

Drs. Schneider and Plotkin both testified that involuntary administration of antipsychotic medication had a 70 percent or greater chance of rendering defendant competent to stand trial. Other courts have held that a similar likelihood of success is a sufficient showing of substantial likelihood to return the defendant to competence *when the evidence identifies the specific medication proposed and addresses the likely effects of such medication with respect to the defendant as an individual.* (See, e.g., *U.S. v. Fazio* (8th Cir. 2010) 599 F.3d 835, 838–841 [75 to 87 percent chance that specific medications would make the defendant competent to stand trial, in light of the defendant's diagnosis and medical history]; cf. *McDuffie, supra,* 144 Cal.App.4th at pp. 887–888 [a 50 to 60 percent chance of restoring competency was not sufficient under *Sell* when the defendant had a history of not responding to treatment].)

■ Here, however, Drs. Schneider and Plotkin testified only about antipsychotic drugs as a class, without identifying what drugs would likely be used to treat defendant. Their testimonies about potential side effects were similarly generic. In *O'Dell,* the court held that, when no evidence was introduced identifying the specific mental condition proposed to be treated and specifying the actual medication proposed to be administered, "there was no evidence to support . . . the court's conclusion that administration of antipsychotic medication was substantially likely to render defendant competent to stand trial and that the medication was unlikely to have side effects that would significantly interfere with his ability to assist trial counsel." (*O'Dell, supra,* 126 Cal.App.4th at p. 571.)

Thus, we conclude the evidence was insufficient to establish the second *Sell* factor.

### 6. *Third* Sell *Factor*

The third *Sell* factor requires a showing that involuntary medication is necessary to further the state's interests in timely prosecution and a fair trial. (*Sell, supra,* 539 U.S. at p. 181; *O'Dell, supra,* 126 Cal.App.4th at p. 571.)

In *O'Dell,* the court found the evidence insufficient to establish the third *Sell* factor when the evidence consisted merely of a conclusionary statement that there were no alternative less intrusive methods likely to achieve the same result. (*O'Dell, supra,* 126 Cal.App.4th at p. 571.) Here, Dr. Plotkin stated his opinion that no effective alternative treatments were available and further testified specifically that traditional psychotherapy was unlikely to benefit defendant. We conclude Dr. Plotkin's discussion of the inefficacy of a specific alternative was sufficient to support the trial court's finding on the third *Sell* factor.

### 7. *Fourth* Sell *Factor*

 The fourth *Sell* factor requires a showing of medical appropriateness. (*Sell, supra,* 539 U.S. at p. 181; *O'Dell, supra,* 126 Cal.App.4th at p. 572.) In *Sell,* the United States Supreme Court explained: "The specific kinds of drugs at issue may matter . . . [because] [d]ifferent kinds of antipsychotic drugs may produce different side effects and enjoy different levels of success." (*Sell, supra,* 539 U.S. at p. 181.) Thus, courts have held that, "[a]t a *Sell* hearing, 'the [trial] court is required to consider specific drugs, their unique side effects, and their medical appropriateness. Specificity as to the medications to be administered is critical.' " (*Carter v. Superior Court* (2006) 141 Cal.App.4th 992, 1004 [46 Cal.Rptr.3d 507], quoting *U.S. v. Rivera-Guerrero* (9th Cir. 2005) 426 F.3d 1130, 1140 (*Rivera-Guerrero*).) In *Carter* and *O'Dell,* the courts held that, when the medical experts failed to identify the specific antipsychotic medications the defendant should be given, there was no evidence before the trial court from which it could determine that involuntary administration of drugs was medically appropriate and in the defendant's best interests. (*Carter, supra,* at pp. 1003–1005; *O'Dell, supra,* at pp. 571–572.)

Federal courts have reached the same conclusions in applying the *Sell* factors. For example, the court in *Rivera-Guerrero* explained that the trial court must develop a record that gives " 'attention to the type of drugs proposed, their dosage, and the expected duration of a person's exposure . . . .' [Citation.]" (*Rivera-Guerrero, supra,* 426 F.3d at p. 1142; see also *U.S. v. Hernandez-Vasquez* (9th Cir. 2008) 513 F.3d 908, 916–917 [a *Sell* order "must provide at least some limitations on the medications that may be administered and the maximum dosages and duration of treatment. At a minimum, to pass muster under *Sell,* the . . . order must identify," among other things, "(1) the specific medication or range of medications that the treating physicians are permitted to use in their treatment of the defendant, [and] (2) the maximum dosages that may be administered . . ."]; *U.S. v. Evans* (4th Cir. 2005) 404 F.3d 227, 239–241 [failure to identify specific antipsychotic medication or possible side effects of that medication, and failure to address the defendant's particular medical condition required reversal of an involuntary medication order].)

 Just as in the above listed cases, the required specific showing was wholly lacking in this case. We therefore reverse the order authorizing involuntary administration of antipsychotic medication because it was not supported by sufficient evidence.

## IV. DISPOSITION

The order of commitment is affirmed. The order authorizing involuntary administration of antipsychotic drugs is reversed.

McKinster, J., concurred.

**KING, J.,** Concurring and Dissenting.—I concur with the majority as it relates to the order authorizing the administration of antipsychotic drugs.

For the reasons stated in my dissent in *People v. Bell* (2010) 181 Cal.App.4th 1071 [105 Cal.Rptr.3d 259], I disagree with the majority's analysis in the unpublished portion of its opinion.

Appellant's petition for review by the Supreme Court was denied March 23, 2011, S189781. Kennard, J., was of the opinion that the petition should be granted.