[No. A111738. First Dist., Div. Two. Oct. 25, 2006.]

THE PEOPLE, Plaintiff and Respondent, v.
VAN McDUFFIE, Defendant and Appellant.

■■■■■■■■■■■■■■■■■■

COUNSEL

Jeremy Price, under appointment by the Court of Appeal, for Defendant and Appellant.

Bill Lockyer, Attorney General, Robert R. Anderson, Chief Assistant Attorney General, Gerald A. Engler, Assistant Attorney General, Violet M. Lee and Christopher J. Wei, Deputy Attorneys General, for Plaintiff and Respondent.

---

OPINION

HAERLE, J.—

## I. INTRODUCTION

Defendant and appellant Van McDuffie appeals from a trial court order authorizing the involuntary administration of antipsychotic medications in order to render him competent to stand trial. McDuffie argues on appeal that the trial court's order is not supported by substantial evidence and, therefore, should be reversed. We conclude the record does not contain substantial evidence that it is "substantially likely" the involuntary administration of medication to McDuffie will render him competent to stand trial. Therefore, we reverse.

## II. FACTUAL AND PROCEDURAL BACKGROUND

On November 2, 2004, McDuffie was charged with one count of second degree robbery (Pen. Code, § 211[1]), with use of a deadly weapon (§ 12022, subd. (b)(1).) Before trial, defense counsel declared a doubt as to his competency to stand trial.

The trial court suspended proceedings and, pursuant to section 1368, appointed Drs. Paul Good and Shawn Johnston to evaluate McDuffie's competency. Defendant waived his right to a jury determination of his competency and the trial court found him incompetent to stand trial.

The court suspended criminal proceedings and appointed Dr. John Chamberlain to examine McDuffie in order to determine whether it would be appropriate to forcibly administer psychotropic medications in order to render McDuffie competent to stand trial.

---

[1] All further statutory references are to the Penal Code, unless otherwise noted.

The court held a hearing on this issue on September 15, 2005. At that time, Dr. Chamberlain testified regarding his evaluation of McDuffie. Chamberlain was the sole witness at this hearing. In addition to Chamberlain's testimony, the trial court also admitted prehearing reports prepared by Chamberlain and two other court-appointed doctors. We summarize this evidence below.

Dr. Good examined McDuffie for the purpose of determining his competence to stand trial under section 1368. Dr. Good reported that he had reviewed McDuffie's psychiatric file from state prison and earlier psychiatric examinations conducted of McDuffie in the past. He also interviewed McDuffie and administered a competency assessment instrument.

Dr. Good concluded that McDuffie suffers from paranoid schizophrenia, a diagnosis that had been made as far back as 2000. He reported, "Mr. McDuffie is currently refusing to be medicated. Although paranoid states do not typically respond well to medication, it would be sensible to experiment with anti-psychotic medications in the hope of finding one that would organize his thoughts and diminish his paranoia. It is possible that an anti-psychotic or mood stabilizing medication could impact his mental state and make him competent. At this time, I do not believe Mr. McDuffie is a danger to himself or others. However, since he has such a negative attitude towards medication he should be monitored carefully when this intervention begins in case he becomes suicidal."

Dr. Jonathan French also conducted a competency examination of McDuffie. Dr. French reviewed McDuffie's psychiatric records, which "reflect a lengthy psychiatric history which typically resulted in a primary psychiatric diagnosis of 'schizophrenia, paranoid type, chronic.' " Dr. French reported that, "[i]n my opinion, the use of anti-psychotic medication may be medically appropriate, although the records suggest that Mr. McDuffie has not always responded well to such treatment even when he has consented to take medication. Nevertheless, a trial course of anti-psychotic medication would be in Mr. McDuffie's best interests as I currently understand them."

Dr. John Chamberlain submitted a report to the court pursuant to the court's ordered examination. Chamberlain concluded that, in his opinion, McDuffie has a history of schizophrenia, paranoid type. In an answer to the self-posed question, "[i]s antipsychotic medication likely to restore the defendant to mental competence?" Chamberlain stated, to a "reasonable degree

of medical probability" that "[a]lthough I have not received medical records in this case, the reports of Drs. Good and French indicate Mr. McDuffie has not always fully responded to antipsychotic medication. . . . Antipsychotic medication may help Mr. McDuffie to organize his thoughts and, to the extent underlying delusions, hallucinations, and thought disorganization interfere with his being competent to stand trial, the medications may be of benefit."

In response to the question, "[w]hat is the expected efficacy of the medication?" Chamberlain wrote, "Although I have not received medical records in this case, the reports of Drs. Good and French indicate Mr. McDuffie has not always responded completely to treatment with antipsychotic medication. Antipsychotic medication may, however, help Mr. McDuffie to organize his thoughts and treat underlying delusions or hallucinations. Therefore if he were to take antipsychotic medication consistently, he might show improvement in his mental status."

Dr. Chamberlain was the sole witness at the hearing held to determine whether the court should order the forced administration of antipsychotic drugs. He was asked for his opinion about whether the antipsychotic drugs he was recommending would have any benefit in restoring defendant's competency. Chamberlain responded, "I think that in this case, the medications that I've mentioned would be likely to provide some benefit to Mr. McDuffie in terms of organizing his thought process, and possibly addressing any underlying delusional beliefs or hallucinations that might be impairing his competence to stand trial."

When asked whether he had an opinion about whether the medications would be substantially likely to render defendant competent to stand trial, Chamberlain testified, "I think to the—to the extent that his competence is being impaired by the results of his schizophrenia, as diagnosed by the prior clinicians, that he would be likely to be restored to a competence with appropriate treatment."

Chamberlain also testified that McDuffie had complained of side effects from the administration of past medications to treat his schizophrenia. These side effects were described by Chamberlain as decreased libido, problems with the left side of his body, neuromuscular abnormalities, involuntary movements, a feeling of a loss of sanity, muscle tightness in his jaw, depressions, and suicidal tendencies. In Chamberlain's view, the medications he had described in court (medicines referred to as "typical" antipsychotic

medications and including drugs known as Aripiprazole and Ziprasidone), would be less likely to cause the side effects McDuffie had complained about.

Chamberlain also testified that treatment with these medicines, "presuming he doesn't have side effects and is able to tolerate the medications, that the medications would be likely to benefit him in his overall condition." As for restoration of competence, Chamberlain said, "the medications would be likely to be of benefit in restoring him to competence . . . ."

On cross-examination, Chamberlain was asked to explain how his opinion had changed from a view that the medicines "may and might" improve McDuffie's mental functioning to the view that the medicines are "substantially . . . likely to render him competent," Chamberlain testified, "I think that—perhaps I should explain. I think that—I certainly don't—didn't use those descriptors. I think that these medications that I've discussed certainly would be expected to improve his mental status, and what I tried to express in my initial report is that, under subjection [*sic*]—under Section 3 of my conclusions, was that, to the extent that his thought disorganization . . . were interfering with his competence to stand trial, that these medications may be helpful in that, and I would expect them to be helpful in that. . . . [¶] I think the medications would be likely to restore him to—to take care of the problems that were stemming from his schizophrenia, but I think that if there are other problems independent of that, those might not respond to the medications."

He also agreed that he had been "careful" in his phrasing in his report because McDuffie's condition "has not always necessarily responded to medication." When asked directly whether anything had changed "to influence your opinion to make it more likely than not, rather than may and might," Chamberlain testified, "Well I think that I am using somewhat different language. I must admit, I don't usually go with terms like 'substantially likely.' I would say that based on my clinical experience and the—the expectations of a medication in treating someone with schizophrenia, that giving someone a medication, you would expect about—somewhere between a 50 and 60 percent chance that they are going to improve with treatment. [¶] If you have someone who has failed some prior trials, that number may go down somewhat, but there's still a reason to expect that they would improve. And I—I guess it is a difference of the language, I'm sorry if that was confusing."

The trial court found that defendant had the capacity to make decisions regarding the administration of antipsychotic medications and did not qualify as a danger to others. The court stated, "The People have charged the defendant with a serious crime against the person or property—no question about it, robbery, with a knife—and then that leaves me with the question whether involuntary administration of antipsychotic medication is substantially likely to render the defendant competent to stand trial, and that it is unlikely to have side effects that interfere with the defendant's ability to understand the nature of the criminal proceedings, or to assist counsel in the conduct of trial in a reasonable manner, whether less intrusive treatments are unlikely to have substantially the same results, and whether antipsychotic medication is in the patient's best medical interests in light of his or her medical condition."

The court concluded that "the involuntary administration of antipsychotic medication is substantially likely to render the defendant competent to stand trial, that it's unlikely to have side effects that interfere with his ability to understand the proceedings or to assist counsel, that less intrusive treatments are unlikely to have substantially the same results, and that this medication is in the patient's best medical interests in light of his medical condition."

The court ordered McDuffie committed to Napa State Hospital and authorized the involuntary administration of antipsychotic medications. The court also set defendant's maximum commitment period to three years in state prison. Defendant has accrued 324 days of actual credits for time served as of September 20, 2005. The court stayed its order and this timely appeal followed.

## III. DISCUSSION

### A. *General Principles*

■ McDuffie has a constitutionally protected "liberty interest in avoiding the unwanted administration of antipsychotic drugs under the Due Process Clause of the Fourteenth Amendment." (*Washington v. Harper* (1990) 494 U.S. 210, 221–222 [108 L.Ed.2d 178, 110 S.Ct. 1028]; see also *Sell v. United States* (2003) 539 U.S. 166, 178 [156 L.Ed.2d 197, 123 S.Ct. 2174]; *People v. O'Dell* (2005) 126 Cal.App.4th 562, 568–569 [23 Cal.Rptr.3d 902].) This same interest is protected under California's right to privacy, which "clearly extends to the right to refuse antipsychotic drugs." (*In re Qawi*

(2004) 32 Cal.4th 1, 14 [7 Cal.Rptr.3d 780, 81 P.3d 224]; see also *Riese v. St. Mary's Hospital & Medical Center* (1987) 209 Cal.App.3d 1303, 1322–1323 [271 Cal.Rptr. 199].)

■ The Legislature codified this constitutional principle in section 1370, subdivision (a)(2)(B)(ii)(III). Under section 1370, a court may order the involuntary administration of antipsychotic medication to render a defendant competent to stand trial only if it finds that "[t]he people have charged the defendant with a serious crime against the person or property; involuntary administration of antipsychotic medication is *substantially likely* to render the defendant competent to stand trial; the medication is unlikely to have side effects that interfere with the defendant's ability to understand the nature of the criminal proceedings or to assist counsel in the conduct of a defense in a reasonable manner; less intrusive treatments are unlikely to have substantially the same results; and antipsychotic medication is in the patient's best medical interest in light of his or her medical condition." (§ 1370, subd. (a)(2)(B)(ii)(III), italics added.)

We review the trial court's order under the substantial evidence standard of review. (*People v. O'Dell, supra*, 126 Cal.App.4th at p. 570.)

B. *Substantial Evidence in Support of Court's Order*

■ McDuffie argues that the court's order was in error because there is not substantial evidence in the record that the forcible administration of antipsychotic drugs is "substantially likely" to render him competent to stand trial. We agree.

The law requires a finding of a "substantial likelihood." In our view, this evidence does not support such a finding.[2] The evidence before the court showed, at best, that McDuffie has a 50 to 60 percent chance of "improving" if treated with the recommended antipsychotic drugs. In all likelihood, this possibility is even smaller because of McDuffie's history of not responding well to treatment. This is simply not enough to support the trial court's finding that these drugs are "substantially likely" to render McDuffie competent to stand trial.

---

[2] Because we reverse on this ground, we do not reach the remaining issues raised by McDuffie challenging the court's findings that the government has an important interest in rendering him competent to stand trial and that there were less intrusive alternatives to administering antipsychotic medication forcibly.

In reaching this conclusion, we note that, in *U.S. v. Rivera-Morales* (S.D.Cal. 2005) 365 F.Supp.2d 1139, 1141, the federal district court concluded that an expert's testimony that there was "an 'over 50%' probability that defendant would be restored to competency with medication" was insufficient on which to make a finding that the forced administration of antipsychotic drugs was substantially likely to restore a defendant to competency. The court explained, "a chance of success that is simply more than a 50% chance of success does not suffice to meet this standard." (*Ibid.*) We agree.

The People's arguments to the contrary are unconvincing. The People point out that there is evidence in the record that each of the doctors examining defendant believed that the medications were an appropriate treatment for defendant's condition and that he would benefit from them. Evidence that a defendant "might" benefit from a treatment is not evidence that this treatment is "substantially likely" to render a defendant competent. Chamberlain's statement that this treatment is "substantially likely" to render defendant competent is not substantial evidence. Rather, this statement must be read in context, to include the basis for this conclusion—namely, that defendant has no better than a 50 or 60 percent chance of being restored to competency. This, as we have explained, does not amount to substantial evidence of a "substantial likelihood."

■ Nor are we persuaded by the People's argument that reliance on *Rivera-Morales* is misplaced because, in that case, the court was the original fact finder rather than a reviewing court. While *Rivera-Morales* is not binding on us, and is in a different procedural posture, it persuasively articulates the general proposition that an expert's opinion that medication would restore a defendant to competency at least 50 percent of the time did not meet the "substantial likelihood" standard set out in *Sell v. United States, supra,* 539 U.S. at page 181 and adopted by the California Legislature in section 1370, subdivision (a)(2)(B)(ii)(III).

Finally, the People argue that *People v. O'Dell, supra,* 126 Cal.App.4th 562 does not support defendant's argument. In *O'Dell*, the trial court concluded that there was insufficient evidence to support the involuntary administration of medication because "the hospital never specified the condition it was proposing to treat and never specified the actual antipsychotic medication it was proposing to administer to defendant." (*Id.* at p. 571, fns. omitted.) *O'Dell* obviously involves a different factual situation than that presented here. It does not, however, compel a different result than the one we reach.

## IV.   DISPOSITION

The court's order authorizing the involuntary administration of antipsychotic medication to defendant is reversed.

Kline, P. J., and Richman, J., concurred.