Filed 9/1/15  P. v. C.D.D. CA4/2

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | E062033 |
| v. | (Super.Ct.No. RIF1408129) |
| C.D.D., | OPINION |
| Defendant and Appellant. | |

APPEAL from the Superior Court of Riverside County.  Mark E. Johnson, Judge. Reversed.

Rosemary Bishop, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, Peter Quon, Jr., and Marilyn L. George, Deputy Attorneys General, for Plaintiff and Respondent.

1

Defendant and appellant C.D.D. appeals from an order of the superior court authorizing the involuntary administration of antipsychotic medications pursuant to Penal Code section 1370.[1] We reverse.

## STATEMENT OF THE CASE

Appellant is charged with possession of methamphetamine (Health & Saf. Code, § 11377, subd. (a)), obstruction of a peace officer (§ 148, subd. (a)(1)), and attempted kidnapping (§§ 664/207, subd. (b).)[2] As competency proceedings were held prior to a preliminary hearing, the only information concerning the kidnapping offense is derived from the police report as filtered through the written opinion and testimony of Dr. Harvey Oshrin, one of the forensic examiners. In brief, a mother and her five-year-old daughter walked past defendant as he was lying on the grass. Defendant held out a $5 bill to the child asking her to "go somewhere with him" or "Come back without your mom and you can have the money."

There is no other evidence concerning defendant's current or previous behavior with respect to violence *or* sexual misconduct. The complaint alleged two prior prison term convictions within the meaning of section 667.5, but neither involved violence; one

---

[1] All subsequent statutory references are to the Penal Code unless otherwise specified.

[2] That subdivision describes the act of one who "for the purpose of committing any act defined in Section 288, hires, persuades, entices, decoys, or seduces by false promises, misrepresentations, or the like, any child under the age of 14 years to go out of this country, state, or county, or into another part of the same county." It does not require force or compulsion.

2

was for obstruction of an executive officer (§ 69) and the other was for petty theft with priors. (§ 666.)

## DISCUSSION

A criminal defendant has a constitutionally protected liberty interest in avoiding the unwanted administration of antipsychotic drugs under the due process clause of the Fourteenth Amendment. (*Washington v. Harper* (1990) 494 U.S. 210, 221-222.) The provisions of section 1370 in question are designed to ensure that the administration of such medications is done only in carefully limited circumstances to achieve a significant goal. (See *Sell v. United States* (2003) 539 U.S. 166, 180-183; see also *In re Qawi* (2004) 32 Cal.4th 1, 15-16 (*Qawi*).) Our review of the trial court's order is limited to the determination of whether or not the decision is supported by substantial evidence. (*People v. McDuffie* (2006) 144 Cal.App.4th 880, 887.)

The issue before this court is quite simple. Involuntary medication may only be ordered if there is substantial evidence that defendant "ha[s] inflicted, attempted to inflict, or made a serious threat of inflicting substantial physical harm on another that resulted in his or her being taken into custody, *and* the defendant presents, as a result of mental disorder or mental defect, a demonstrated danger of inflicting substantial physical harm on others." (§ 1370, subd. (a)(2)(B)(i)(II), italics added.)

That statute goes on to provide that a finding of dangerousness may be based on "an assessment of the defendant's present mental condition, including a consideration of

3

past behavior of the defendant within six years . . . and other relevant evidence."[3] (§ 1370, subd. (a)(2)(B)(i)(II).) However, as we have noted, there *was* no other relevant evidence before the court. We conclude that the trial court's order was not sufficiently supported.

Defendant frames the issue as whether the evidence supports the conclusion that he represents a danger *in the setting in which he is placed*, whatever risks he might present to young children. We believe this is the correct approach. The standards under which antipsychotic medications may be ordered under section 1370, subdivision (a)(2)(B)(i)(II), are stated in the conjunctive—the defendant must have inflicted, attempted to inflict, or threatened to inflict "substantial physical harm" on the victim of the charged offense, *and* he must currently present a "demonstrated danger of inflicting substantial physical harm on others." Thus, it is not enough that the defendant have inflicted injury in the course of committing the charged offense; he must continue to constitute a danger in his or her present circumstances.

It will be noted that this subdivision reflects the governmental interest in preventing violence or injury, while section 1370, subdivision (a)(2)(B)(i)(I), serves to promote the important interest in the welfare of a defendant who does not have the

---

[3] Two other circumstances will authorize an order for antipsychotic medications under section 1370, subdivisions (a)(2)(B)(i)(I) and (III)—where the defendant is incapable of consenting and serious harm will result if he or she is not treated, and where the defendant is charged with a serious crime and antipsychotic medication is likely to render the defendant competent to stand trial. The trial court found that neither of these applied and this decision is not challenged.

capacity to consent to the administration of antipsychotic medications, and subdivision (a)(2)(B)(i)(II) focuses on the need to assist the defendant in regaining competency so that he or she may stand trial. (See *Sell v. United States*, *supra,* 539 U.S. 166.) Here, we agree with defendant that whether defendant represents a danger to others must be considered as a matter of *institutional security* and that evidence that defendant will present any danger to others while confined awaiting the restoration of competency is wholly lacking in this case.

As a useful comparison, inmates in state prison may not be involuntarily medicated without a hearing on the question of dangerousness, which obviously relates to their dangerousness while confined. (*Qawi*, *supra*, 32 Cal.4th at p. 22.) The same is true for those confined under the Lanterman-Petris-Short Act (Welf. & Inst. Code, §§ 5000 et seq.) as well as those confined as mentally disordered offenders, who may only be involuntarily medicated if determined to be dangerous to others. (*Qawi*, at p. 27.)

The People argue that defendant represents a danger to young female children and may therefore be compelled to take antipsychotic medications. But this inchoate risk (such as it is) is inapplicable where defendant will be confined in a secure mental health treatment facility. The question must be whether the medication is necessary to keep defendant from being a danger to staff and other patients, and there is no evidence that this is the case.

The People do point out that one of the mental health evaluations described defendant as being at times "irritated," "angry" and "argumentative" during the

interview. This falls far short of demonstrating that he is likely to assault staff or other patients. (Cf. *Washington v. Harper, supra*, 494 U.S. at p. 227, fn.11 [inmate with history of at least 20 assaults on fellow inmates and staff]; see *Department of Corrections v. Office of Admin. Hearings* (1998) 66 Cal.App.4th 1100, 1105 [recent repeated threats to kill facility staff and prosecutor or judge, staff assault].) A finding of dangerousness cannot be based upon a defendant's dissatisfaction with the way his or her case is progressing, which was the focus of defendant's complaints and agitation in this case.

If it were necessary to reach it, we would also find the decision vulnerable on another basis. Defendant appears to concede that there was substantial evidence that he had at least attempted or threatened to inflict "substantial physical harm" on the victim. We think this is dubious. At the hearing, Dr. Oshrin commented with respect to the apparent facts of the charged offense, "of course without saying, but I think everyone in this room can fill in the blanks as to what he had in mind." But even if we assume that this was proper speculation, defendant was only charged with kidnapping based on an intent to violate section 288. That statute may be violated by *any* touching of the minor victim, even if outwardly innocuous and inoffensive. The gravamen of the criminal offense is the actor's lewd intent, not the nature of the touching. (*People v. Shockley* (2013) 58 Cal.4th 400, 404, citing *People v. Lopez* (1998) 19 Cal.4th 282, 288.)

Of course in another sense, and section 288 reflects this, child victims are subject to substantial harm whenever they are perceived and used as objects of sexual desire.

(*People v. Martinez* (1995) 11 Cal.4th 434, 444.)  Thus, in one sense all touching in violation of section 288 is "harmful."  However, before antipsychotic medications can be administered under section 1370, subdivision (a)(2)(B)(i)(II), the court must find that the defendant attempted to inflict "substantial *physical* harm."  (Ibid., italics added.)  There is simply no basis to assume that defendant's inept attempt to lure the victim away from her mother[4] reflected an ultimate plan to inflict "substantial *physical* harm" on the child.  (Ibid., italics added.)  When the language of a statute is clear, we are not at liberty to reinterpret it to make it say what we might think it *should* say and must stop with the meaning clearly expressed.  (*People v. McCullough* (2013) 56 Cal.4th 589, 592.)[5]

Given the broad scope of section 288, we might just find that there is substantial evidence that defendant attempted to accomplish a kidnapping which would have led to a lewd act.  But—especially in the absence of any evidence of previous violence or sexual offenses—we would find it difficult to say that the record contains substantial evidence that defendant committed an act which threatened "substantial physical harm" to the victim.

---

[4]  Inept, as the mother was right there to observe the attempt, which involved no force and in fact emanated from a perpetrator in a disadvantageous prone or supine position.

[5]  We are aware that Welfare and Institutions Code section 6600.1 provides that *any* sexual offense against a child under the age of 14 is a " 'sexually violent offense' " for the purposes of the Sexually Violent Predators Act, even though, as we have noted, violations of section 288 need not involve even undesired touching.  The Legislature is, of course, free to define terms however it chooses, but we prefer not to do violence to common understanding unless directed to do so.

In any event the first part of our discussion is sufficient to require reversal.

DISPOSITION

The judgment is reversed.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

HOLLENHORST
Acting P. J.

We concur:


KING
J.


MILLER
J.