Filed 2/28/23  P. v. Y.R. CA4/2

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

# FOURTH APPELLATE DISTRICT

# DIVISION TWO

THE PEOPLE,

     Plaintiff and Respondent,

v.

Y.R.,

     Defendant and Appellant.

E078655

(Super. Ct. No. FVI21003050)

OPINION

APPEAL from the Superior Court of San Bernardino County.  Miriam I. Morton, Judge.  Affirmed.

Steven S. Lubliner, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Charles C. Ragland , Assistant Attorney General, Paige B. Hazard and Anthony Da Silva, Deputy Attorneys General, for Plaintiff and Respondent.

I.

INTRODUCTION

While in a psychotic state, defendant and appellant Y.R. assaulted another person with a crescent wrench. After defendant was declared incompetent to stand trial, the trial court authorized an order for involuntary administration of antipsychotic medication pursuant to Penal Code[1] section 1370, subdivision (a)(2)(B)(ii)(I). On appeal, defendant argues the order authorizing involuntary administration of antipsychotic medication must be reversed because there was insufficient evidence to support the order. Alternatively, defendant contends the case should be remanded to allow the trial court to issue findings of fact and conclusions of law. We reject these contentions and affirm the order.

II.

PROCEDURAL BACKGROUND

On November 3, 2021, the People filed a felony complaint charging defendant with assault with a deadly weapon, to wit, a crescent wrench (§ 245, subd. (a)(1)).

On November 9, 2021, defendant pleaded not guilty and a preliminary hearing was set. On December 1 and 8, 2021, the matter was continued because defendant refused to be transported to court.

On December 16, 2021, defendant was present in court and her appointed counsel declared a doubt as to defendant's competency to stand trial pursuant to section 1360.

---

[1] All future statutory references are to the Penal Code.

2

The trial court suspended proceedings and appointed a doctor to evaluate defendant's competency.

Dr. Jose M. Muinos Ph.D., a psychiatrist, interviewed defendant on December 22, 2021 at the jail and had access to defendant's medical and police records. Dr. Muinos indicated that defendant's incompetency was caused by a mental disorder, specifically bipolar disorder. He opined that defendant was able to understand the nature of the proceedings, but was unable to assist counsel in a rational manner in preparing her defense. Dr. Muinos noted that defendant should be examined to determine if antipsychotic medications were medically appropriate and that defendant did not have the capacity to make decisions regarding antipsychotic medications.

Dr. Muinos explained: "A review of the medical chart at the West Valley Detention Center indicates that [defendant] is seen as disoriented, disheveled, paranoid, irritable with poor insight and judgment. She has been diagnosed with Bipolar Disorder and she is not seen as having any symptoms that would preclude her from attending court. The defendant refused to take medications." Dr. Muinos further stated that it was a difficult case, stating: "At times the defendant has the appearance of a competent defendant, but at other times she will say she is the President [of the United States], or that she was already in the county jail when she was arrested. She believes that someone else committed the crime she is accused of. It is somewhat a toss-up whether she would be considered competent at this time."

A hearing was held on February 3, 2022. Defendant refused to appear in court, and the parties submitted on Dr. Muinos's report. The parties stipulated Dr. Muinos would testify in accordance with his report. The trial court accepted the stipulation. Defendant's appointed counsel noted that Dr. Muinos found defendant incompetent and also informed the court for the record that their office had stipulated to a forced treatment order for defendant under section 2603 in a separate proceeding. The court found defendant incompetent to stand trial, continued the suspension of criminal proceedings, and referred defendant to MHM Services for a placement recommendation. The court also referred defendant to Dr. Mendel Feldsher, a forensic psychiatrist, to determine whether the administration of involuntary medication was necessary to restore defendant's competency.

On February 21, 2022, Dr. Ashley Rubio, a psychologist employed by MHM Services, submitted a placement recommendation for defendant. Because defendant continued to pose a danger to the victim and the community, Dr. Rubio recommended that defendant be referred to the California Department of State Hospitals (DSH) "in order to receive competency training in a locked forensic setting that has the necessary psychiatric interventions to restore her to competency, while also providing the high level of structure and support she requires."

On February 22, 2022, Dr. Feldsher's report was filed with the court. Dr. Feldsher determined whether defendant met the criteria for a court order permitting the involuntary administration of antipsychotic medication. Dr. Feldsher's report indicates that he had

4

attempted to interview defendant at the jail. However, once defendant was informed that a court-appointed psychiatrist arrived to interview her she refused to participate. Dr. Feldsher reviewed the police reports regarding the instant offense, the competency evaluation by psychiatrist Dr. Muinos, defendant's jail medical records, and a California Law Enforcement Telecommunications System (CLETS) printout.

Following his evaluation, Dr. Feldsher concluded that defendant met "multiple criteria to support an involuntary medication order in accordance with [Penal Code section] 1370[, subdivision](a)(2)(B)(i)(I-II)[.]" Specifically, Dr. Feldsher opined that defendant met the criteria for an involuntary medication order because defendant: (1) suffered from an unspecified psychotic disorder, which was appropriately treated with antipsychotic medication; (2) lacked decision-making capacity as she lacked insight into her mental disorder and was unable to engage in a rational conversation regarding the benefits versus risks of treatment; (3) currently suffered adverse effects to her mental health, which was evidenced by her recently expressed paranoid delusional belief that her father and stepbrother came into the jail and raped her; and, (4) demonstrated danger as a result of the mental disorder because she was in custody for a highly violent offense that was psychosis-driven and her psychosis remained uncontrolled. Dr. Feldsher noted that defendant was currently on an involuntary medication order at the jail pursuant to section 2603.

Dr. Feldsher also provided information pursuant to section 1370, subdivision (a)(2)(B)(i)(III) for the trial court's consideration in authorizing an involuntary

medication order.  Dr. Feldscher explained:  "Treatment with antipsychotic medication is likely to restore [defendant] to trial competence.  Treatment with antipsychotic medication is unlikely to compromise [defendant]'s trial competence.  Alternative, less intrusive treatments are unlikely to restore [defendant] to trial competence.  Treatment with antipsychotic medication is in [defendant]'s best medical interests in light of her psychotic disorder."

Dr. Feldsher indicated the "[m]ore serious side effects of antipsychotic medications include extrapyramidal symptoms, tardive dyskinesia, metabolic syndrome with an increased risk for diabetes, orthostatic hypotension, seizures, agranulocytosis, hyperthermia, and neuroleptic malignant syndrome which can be fatal."  Dr. Feldsher noted that "[t]he risks of untreated psychosis include . . . suicide, homicide, accidents, violence towards others, victimization from others, arson, homelessness, incarceration, institutionalization, premature death due to untreated medical illness, seizures as a result of electrolyte abnormalities due to excessive water consumption, intestinal blockage or perforation as a result of swallowing foreign objects, and self-induced ocular and/or genital mutilation."

Dr. Feldsher opined "the specific antipsychotic medication which [defendant] should be administered is best decided by the psychiatrist who will assume [her] care."  Dr. Feldsher explained there was "no definitive way to know in advance which antipsychotic medication will be effective . . . given [the] patient's psychosis," and that "in the absence of any known past history of a positive response with a particular

6

medication," it was not "uncommon for individuals with psychosis to require trials with more than one antipsychotic medication in order to achieve an appreciable response with a particular medication."

The trial court held a hearing on February 25, 2022. Defendant again refused to come to court. The trial court indicated it had a placement report and order for involuntary medication. The parties stipulated the doctors would testify in accordance with their reports, which would be received into evidence, and the court accepted the stipulation. Defendant's counsel submitted on the placement report, but requested a formal hearing on the issue of involuntary forced medication. The court ordered defendant committed to the DSH for two years, noting her maximum term of exposure was four years, and set a hearing regarding involuntary medication. The court also ordered that defendant be transported to court and that Dr. Feldsher be available by telephone to testify.

On February 28, 2022, a contested involuntary medication hearing was held. Defendant again refused to attend court. The trial court stated "[o]nce again [defendant] refused to come to court and for her safety and the safety of staff [defendant] was not physically forced to come to court." Dr. Feldsher testified that defendant suffered from a mental disorder of having psychotic symptoms, including paranoid delusional beliefs, at the time of the offense and during the past months while in jail. Dr. Feldsher noted the police report indicated that at the time of the charged assault with a deadly weapon, defendant was yelling at imaginary people in the wall. Dr. Feldsher determined "[t]he

available evidence supports that her alleged assaultive behavior was the product of her uncontrolled psychosis." He explained that at the jail defendant had articulated a paranoid delusional belief her father and stepbrother were coming into her cell and raping her and that defendant had requested a pregnancy test based on that belief. Defendant had also stated at the jail her belief that she was the President of the United States.

Dr. Feldsher opined that it was medically appropriate to treat defendant's mental disorder with antipsychotic medication and that defendant showed "compelling evidence" she suffered psychotic symptoms from a psychotic disorder to which she required medication. Dr. Feldsher also concluded that defendant lacked decision making capacity regarding the need for antipsychotic medication and that, although he did not have the benefit of interviewing defendant, his opinion was based on the totality of the evidence including recent jail notes. A January 28, 2022 jail note indicated "in the context of her paranoid delusional beliefs about her stepbrother and father" defendant had stated that she would not take her "medications anymore" and that she would sue the psychiatrist.[2] Dr. Feldsher explained defendant's statements demonstrated it was "likely" that defendant "lacks insight regarding her mental disorder," she was "not able to rationally

---

[2] Jail medical records between November 15, 2021 and February 18, 2022 noted defendant's beliefs that she was a telepath and the president, her father and stepbrother snuck into her cell at night to rape her, and family members were paying the jail to keep her there. The jail medical records also noted defendant's refusal to take medication, an involuntary medication order, defendant's protest of the involuntary medication order instituted in January 2022 with threats to sue jail medical personnel, and a statement by her on February 18, 2022, that she was "doing better." No delusions, outbursts, or complaints were noted for February 18, 2022, but listed defendant's medications and dosages and her medical conditions of epilepsy and bipolar disorder.

8

appreciate her need for antipsychotic medication" and was not able to recognize "how failure to accept treatment would place her at risk in the future [for] adverse consequences connected to her uncontrolled psychosis."

Dr. Feldsher concluded defendant was currently suffering adverse effects to her mental health as "clearly evidenced" by defendant's recent expressed paranoid delusional beliefs that she was being raped by her relatives in jail and her apparent psychosis-driven violent behavior during the charged assault with a deadly weapon. Dr. Feldsher testified that if defendant's psychosis was not medically treated, defendant would be at an elevated risk of self-harm, harming others or being victimized by others and that defendant's assault of a relative with no "reality based reason" supported the finding that she was at particular risk of committing violence against others if her psychosis was not treated.

The prosecutor requested that defendant be involuntarily administered antipsychotic medication because of her current untreated psychotic symptoms, the future harm posed by not medicating her, and her lack of decision-making ability regarding the need for the medication. Defendant's counsel did not have any questions for Dr. Feldsher, but argued there was insufficient evidence to order defendant to involuntarily take antipsychotic medication because the requirements of section 1370 had not been met. Defendant's counsel explained that there was no evidence the medication was likely to render defendant competent to stand trial, was unlikely to have side effects that would interfere with her ability to understand the proceedings, would allow her to assist counsel

9

to conduct her defense, or a less intrusive treatment was unavailable. Defendant's counsel also noted the evidence was insufficient to show that antipsychotic medication was in defendant's best interest in light of her medical condition. After considering Dr. Feldsher's testimony and argument by the parties, the trial court granted the involuntary medication order and ordered that antipsychotic medications could be administered involuntarily to defendant. The court also confirmed defendant's state hospital commitment.

On March 4, 2022, a stipulation and proposed order to continue the order authorizing involuntary medication pursuant to section 2603 was filed under seal. This order included stipulations and findings made by a psychiatrist. On March 7, 2022, the trial court signed the order. The order stated: "The Court having considered the matter and stipulation of the parties finds by clear and convincing evidence that: [¶] (1) The defendant has a serious mental disorder that requires treatment with psychiatric medication; [¶] (2) But for the medication, the defendant would revert to the behavior that was the basis for the prior order authorizing involuntary medication; and [¶] (3) The defendant lacks insight regarding his or her . . . own medication and treatment regimen."[3] Defendant timely appealed.

_____

[3] On May 25, 2022, defendant filed a record omission notice pursuant to California Rules of Court, Rule 8.340(b) seeking the written order for involuntary medication. On June 27, 2022, the superior court clerk filed a response stating that there was no written order. Defendant's appellate counsel notes in the opening brief that DSH has since filed a certificate of restoration of competence but that defense counsel has refused to submit on it and that according to the online docket, a jury trial on defendant's competency was scheduled for August 17, 2022.

DISCUSSION

Defendant argues the order authorizing involuntary administration of antipsychotic medication must be reversed because it was made without any evidentiary support or, alternatively, the matter should be remanded so the trial court can issue findings of fact and conclusions of law. We disagree.

A. *Standard of Review and Applicable Law*

The parties agree that our standard of review in this matter is whether substantial evidence supports the trial court's order authorizing defendant's involuntary medication. Courts of Appeal have indeed so held. (See *People v. McDuffie* (2006) 144 Cal.App.4th 880, 887; *People v. O'Dell* (2005) 126 Cal.App.4th 562, 570 (*O'Dell* ); *People v. Christiana* (2010) 190 Cal.App.4th 1040, 1049-1050; *People v. Coleman* (2012) 208 Cal.App.4th 627, 633.) Accordingly we look for, as our Supreme Court has held, """"evidence which is reasonable, credible, and of solid value"""" (*People v. Prince* (2007) 40 Cal.4th 1179, 1251, quoting *People v. Hillhouse* (2002) 27 Cal.4th 469, 496), and view the evidence in the light most favorable to the verdict to determine if it supports the trial court's finding (*People v. Marshall* (1997) 15 Cal.4th 1, 31). In other words, "[a] substantial evidence inquiry examines the record in the light most favorable to the judgment [or order] and upholds it if the record contains reasonable, credible evidence of solid value upon which a reasonable trier of fact *could* have relied in reaching the conclusion in question. Once such evidence is found, the substantial evidence test is

11

satisfied." (*People v. Barnwell* (2007) 41 Cal.4th 1038, 1052, citing *People v. Johnson* (1980) 26 Cal.3d 557, 578.)

Individuals have a qualified right to refuse antipsychotic medication under the federal and state constitutions. (*Sell v. United States* (2003) 539 U.S. 166, 178; *In re Qawi* (2004) 32 Cal.4th 1, 14-16.) They have a "significant" constitutionally protected "liberty interest in avoiding the unwanted administration of antipsychotic drugs under the Due Process Clause of the Fourteenth Amendment." (*Washington v. Harper* (1990) 494 U.S. 210, 221-222; see *People v. McDuffie*, *supra*, 144 Cal.App.4th 880, 886; *O'Dell*, *supra*, 126 Cal.App.4th at pp. 568-569.) This same interest is protected under California's right to privacy, which "clearly extends to the right to refuse antipsychotic drugs." (*In re Qawi*, *supra*, at p. 14; see *People v. McDuffie*, *supra*, at pp. 886-887.) State prison inmates may do so unless "the inmate is dangerous to himself or others and the treatment is in the inmate's medical interest." (*Washington v. Harper*, *supra*, at p. 227.) Pretrial detainees are entitled to the same protection. (*Riggins v. Nevada* (1992) 504 U.S. 127, 135.)

The United States Supreme Court has held the government can involuntarily medicate a mentally ill criminal defendant in order to render him or her competent to stand trial only if four factors are present. (*Sell v. United States*, *supra*, 539 U.S. at p. 180.) First, important governmental interests must be at stake. Thus, bringing an accused to trial is important but courts must consider the individual case. Second, the court must conclude that involuntary medication will significantly further the

concomitant state interests of timely prosecution and a fair trial. (*Id*. at p. 181.) The court must find that administration of drugs "is substantially likely to render the defendant competent to stand trial" and "must find that administration of the drugs is substantially unlikely to have side effects that will interfere significantly with the defendant's ability to assist counsel in conducting a trial defense, thereby rendering the trial unfair." (*Ibid*.) Third, the court must conclude involuntary medication is necessary to further those interests. (*Ibid*.) The court must find that any alternative, less intrusive treatments are unlikely to achieve substantially the same results. (*Ibid*.) And the court must consider less intrusive means for administering drugs. (*Ibid*.) Fourth, the court must conclude administration of the drugs is medically appropriate, i.e., in the patient's best interest given his or her medical condition. (*Ibid*.) "The specific kinds of drugs at issue may matter here as elsewhere. Different kinds of antipsychotic drugs may produce different side effects and enjoy different levels of success." (*Ibid*.) "A court need not consider whether to allow forced medication [to render a defendant competent to stand trial], if forced medication is warranted for a *different* purpose, such as . . . the individual's dangerousness, or purposes related to the individual's own interests where refusal to take drugs puts his [or her] health gravely at risk." (*Id*. at pp. 181-182.)

These constitutional requirements have been codified by our Legislature in the Penal Code. (§ 1370, subd. (a)(2)(B); see *O'Dell*, *supra*, 126 Cal.App.4th at p. 569.) Under California law, when a defendant has been found mentally incompetent, a trial court must determine whether a "defendant lacks capacity to make decisions regarding

13

the administration of antipsychotic medication." (§ 1370, subd. (a)(2)(B).) In 2004, the California Legislature amended section 1370 to meet modern constitutional standards. (*People v. Lameed* (2016) 247 Cal.App.4th 381, 396.) Among those amendments, the Legislature added subdivision (a)(2)(B), which permits involuntary medication in three circumstances: (1) a defendant lacks the capacity to make decisions regarding antipsychotic medication, and it is necessary to protect the defendant's health; (2) the defendant is a danger to others; or (3) involuntary medication is necessary to restore the defendant to competence for trial. (§ 1370, subd. (a)(2)(B)(i)(I)-(III); see *People v. Lameed*, *supra*, at p. 396.) If any one of three conditions are satisfied the court shall issue an order authorizing involuntary administration of antipsychotic medication to the defendant when and as prescribed by the defendant's treating psychiatrist at the facility housing defendant for restoration of competency. (§ 1370, subd. (a)(2)(B)(ii); see § 1370, subd. (a)(2)(B)(i)(I)-(III).)

The first condition is when the court finds "the defendant lacks capacity to make decisions regarding antipsychotic medication, the defendant's mental disorder requires medical treatment with antipsychotic medication, and, if the defendant's mental disorder is not treated with antipsychotic medication, it is probable that serious harm to the physical or mental health of the [patient] will result." (§ 1370, subd. (a)(2)(B)(i)(I).) The second condition is met if the court finds the defendant is a danger to others and has inflicted or threatened to inflict "substantial physical harm on another . . . and the defendant presents, as a result of mental disorder or mental defect, a demonstrated danger

14

of inflicting substantial physical harm on others." the defendant is a danger to others, in that the defendant inflicted, attempted or threatened to inflict substantial physical harm on another while in custody, or the defendant was taken into custody for inflicting, or attempting or threatening to inflict substantial physical harm on another, and the defendant presents, as a result of a mental disorder or defect, a "demonstrated danger of inflicting substantial physical harm on others." (§ 1370, subd. (a)(2)(B)(i)(II).) And the third condition is when the defendant has been charged with a serious crime against the person or property, "involuntary administration of antipsychotic medication is substantially likely to render the defendant competent to stand trial," there is no less intrusive treatment, and antipsychotic medication is in the defendant's best medical interest in light of their medical condition. (§ 1370, subd. (a)(2)(B)(i)(III).)

B. *Analysis*

Defendant contends there was insufficient evidence to establish any of the three conditions for authorizing the involuntary administration of antipsychotic medication enumerated in section 1370, subdivision (a)(2)(B)(i)(I-III). The People respond that there was substantial evidence to support the trial court's order under section 1370, subdivision (a)(2)(B)(i)(I).

Preliminarily, we note that at the February 28, 2022 involuntary medication hearing the People did not claim the condition under section 1370, subdivision (a)(2)(B)(i)(III) had been satisfied. In other words, the People did not argue that involuntary administration of antipsychotic medication was substantially likely to render

15

defendant competent to stand trial, there was no less intrusive treatment, and antipsychotic medication was in defendant's best medical interest. (See § 1370, subd. (a)(2)(B)(i)(III).) Rather, the People argued that defendant should be "forced to undergo antipsychotic medication due to the adverse effects that is currently displayed on her, the future harm it poses, and her lack of decision-making ability. . . ." The People relied only on the first condition to authorize an involuntary medication order.

To support an involuntary medication order under the first condition pursuant to section 1370, subdivision (a)(2)(B)(i)(I), the trial court must make the following three findings: (1) defendant lacked the capacity to make decisions regarding treatment with antipsychotic medication; (2) defendant's mental illness required treatment with antipsychotic medication; and (3) serious harm to defendant's physical or mental health would result if defendant were not so treated. (§ 1370, subdivision (a)(2)(B)(i)(I).)

Here, substantial evidence supports a finding that defendant lacked the capacity to make decisions regarding antipsychotic medication. The record shows defendant did not understand her diagnosis or treatment options and was unable to rationally discuss them. Defendant failed to rationally participate in treatment decisions by refusing to be interviewed by Dr. Feldsher, the court-appointed psychiatrist, at the jail. Dr. Feldsher thus had to rely on the totality of the evidence before him including the jail notes. The jail notes indicated defendant had hid under the blankets in her cell because she claimed her father and stepbrother could see her through cameras in the walls. Defendant also claimed that her stepbrother and father had keys to her cell, entered her cell and raped

16

her.  Defendant stated that she would "not take the medications anymore," the document presented to her was "not a valid order from the court," and that she would sue the psychiatrist.  Dr. Feldsher testified that the jail notes reflecting defendant's delusional beliefs about her father and stepbrother and refusal to take medication demonstrated a likelihood that defendant "lacks insight regarding her mental disorder," she was "not able to rationally appreciate her need for antipsychotic medication," and she was not able to recognize "how failure to accept treatment would place her at risk in the future [for] adverse consequences connected to her uncontrolled psychosis."  Moreover, defendant repeatedly refused to attend court, including the February 28, 2022 involuntary medication hearing where the court could have been able to evaluate her capacity to make decisions.

Although, as defendant points out, the most recent medical record of February 18, 2022 reported the medication she was on and defendant's statement that she was "'doing better,'" defendant ignores the fact that she was placed on involuntary medication in a different proceeding.[4]  Presumably, defendant was "'doing better'" because she was involuntarily being administered medication to combat her bipolar disorder.  Defendant also fails to note that just seven days earlier, on February 11, 2022, the jail psychiatry

---

[4]  The February 18, 2022 jail psychiatry note specifically states:  "Seen at cell door with assigned deputy.  Limits of confidentiality discussed and she agrees to continue.  'I am doing better.'  No side effects reported . . . .  Current Medications:  Diphenhydramine 100 mg po qhs; Levetiracetam ER 1000 mg po qam; Lithium 300 mg po tid; Phenytoin 100 mg po tid; Risperdal Consta 50 mg intramuscular every 14 days in the AM - Patient on involuntary order . . . .  Current Conditions:  Epilepsy Unspecified; Bipolar Disorder."

note stated: "Initially [defendant] was in bed, covered with blanket, talking loudly to self. When asked who is she talking to, she casually answered, 'Oh, was my father. I am hiding under the blanket so he and my stepbrother Seth can't see me. They have cameras in the walls. Do you want proof? Tell the deputies to check for cameras in the walls of my other room please." Furthermore, the psychiatry jail notes for January 28, 2022, stated: ". . . She becomes more paranoid again. [Defendant stated] 'It's fact that my stepbrother that has the keys of this cell came in and raped me. It's on camera. I will not take the medications anymore. This is not a valid order from the court. I am going to sue you. Where is your name on the paper?'" The evidence was sufficient to support a finding that defendant lacked the capacity to make decisions regarding treatment with antipsychotic medication. (See *People v. Lameed*, *supra*, 247 Cal.App.4th at pp. 399-400.)

Turning to the second element, there was sufficient evidence to show defendant's mental illness required treatment with antipsychotic medication. Indeed, defendant does not argue otherwise. At the involuntary medication hearing, Dr. Feldsher testified that defendant showed "compelling evidence" she suffered psychotic symptoms from a psychotic disorder that was medically treated with antipsychotic medication and opined that it was medically appropriate to treat defendant's mental disorder with antipsychotic medication. There was undeniable medical evidence that defendant suffered from an unspecified psychotic disorder and that, when a patient did not have any known history with a particular antipsychotic medication, the treating psychiatrist was in the best

18

position to determine what antipsychotic medication was medically appropriate for the patient's condition. Dr. Feldsher explained that it was not "uncommon" for persons with psychosis to require trials with more than one antipsychotic medication to achieve an appreciable response with a particular medication.

Defendant argues Dr. Feldsher "did not pin down [her] diagnosis," "did not recommend a particular antipsychotic medication so that the trial court could hone in on particular side effects," and "did not explain why less intrusive methods would be ineffective in restoring [her] competence." Defendant believes that Dr. Feldsher's recommendations were "as conclusory and unsupported" as those condemned in *Carter v. Superior Court* (2006) 141 Cal.App.4th 992; *O'Dell*, *supra*, 126 Cal.App.4th 562; and *People v. Christiana*, *supra*, 190 Cal.App.4th 1040. However, *Carter*, *O'Dell* and *Christiana* are distinguishable since none of those cases involved an involuntary administration of antipsychotic medication under the first condition of the statute – section 1370, subdivision (a)(2)(B)(i)(I). (See *Carter v. Superior Court*, *supra*, 141 Cal.App.4th 992 [forcible administration of antipsychotic medications to render a defendant competent for trial]; *O'Dell*, *supra*, 126 Cal.App.4th at p. 570, fn. 3 [no evidence the defendant lacked capacity to make decisions regarding antipsychotic medication or that he was a danger to others within the meaning of the first two grounds]; *People v. Christiana*, *supra*, 190 Cal.App.4th at p. 1049, fn. 4 ["The People do not contend that involuntary medication is justified for those other purposes, and none of the medical experts expressed an opinion that those purposes applied to defendant."].)

19

For this same reason, we reject the less-intrusive argument raised by defendant. The People did not argue, and the court did not find, the order was authorized under the third condition pursuant to section 1370, subdivision (a)(2)(B)(i)(III). We also reject defendant's remaining contentions. As noted previously, Dr. Feldsher explained why it was not "uncommon" for persons with psychosis to require trials with more than one antipsychotic medication. In addition, defendant's medical records indicate that she suffered from bipolar disorder.

Lastly, there was substantial evidence to satisfy the third factor, namely "if the defendant's mental disorder is not treated with antipsychotic medication, it is probable that serious harm to the physical or mental health of the [patient] will result." (§ 1370, subd. (a)(2)(B)(i)(I).) "Probability of serious harm to the physical or mental health of the defendant requires evidence that the defendant is presently suffering adverse effects their physical or mental health, or the defendant has previously suffered these effects as a result of a mental disorder and their condition is substantially deteriorating. The fact that a defendant has a diagnosis of mental disorder does not alone establish probability of serious harm to the physical or mental health of the defendant." (§ 1370, subd. (a)(2)(B)(i)(I).)

Dr. Feldsher testified defendant's paranoid delusional beliefs showed that she was currently suffering adverse effects to her mental health. He also noted defendant's violent behavior during the charged assault with a deadly weapon was psychosis driven. Dr. Feldsher concluded that without medication, defendant's mental health would suffer

20

mental decline and that it would be harder to treat defendant. Dr. Feldsher's examinations of the psychiatry jail notes and defendant's medical and criminal records and conclusions rebut defendant's argument that "[e]vidence of probable harm to [defendant]'s 'physical or mental health' under section 1370[, subdivision] (a)(2)(B)(i)(I) was also lacking." We believe Dr. Feldsher clearly opined that without the proper medication, defendant's mental health would substantially deteriorate and that she would pose a probable risk of harm to self and others. Defendant's refusal to take medication and an involuntary medication order from another proceeding also supply further evidence of the efficacy of involuntary treatment.

Defendant argues that "[t]he evidence of probable harm to [her] mental health was . . . weak" because "the most recent medical record of February 18, 2022, showed her as lucid and cooperative." Nonetheless, defendant's jail medical records from November 15, 2021, to February 11, 2022, showed that defendant was presently suffering from delusions of being the President of the United States, paranoia that she was being observed, being visited and raped by her father and stepfather, that she was pregnant, and that people were paying money to keep her in jail. Defendant also displayed antagonistic moods about taking her medication.

We find substantial evidence to support an order for involuntary administration of antipsychotic medication pursuant to section 1370, subdivision (a)(2)(B)(i)(I). Given that substantial evidence supported its order, we find no error.

21

We reject defendant's alternative argument that the matter should be remanded for the trial court to issue findings of fact and conclusions of law. The record indicates that on March 4, 2022, a stipulation and proposed order to continue the order authorizing involuntary medication pursuant to section 2603 was filed under seal. The stipulations and agreements included that a psychiatrist or psychologist had determined that defendant: (1) "has a serious mental disorder and that involuntary administration of medication is necessary to treat the patient[;] . . . (2) "is gravely disabled and does not have the capacity to refuse treatment with psychiatric medications, or is a danger to self or others." . . . (5) "the medication is in the patient's best medical interests" . . . (6) "but for the medication, the patient would revert to the behavior that was the basis for the prior order authorizing involuntary medication." . . . [and] (7) "the patient continues to lack insight regarding the need for medication." Furthermore, on March 7, 2022, the trial court signed the order for authorization to administer involuntary medication. The order included the court's findings and stated: "The Court having considered the matter and stipulation of the parties finds by clear and convincing evidence that: [¶] (1) The defendant has a serious mental disorder that requires treatment with psychiatric medication; [¶] (2) But for the medication, the defendant would revert to the behavior that was the basis for the prior order authorizing involuntary medication; and [¶] (3) The defendant lacks insight regarding his or her own medication and treatment regimen."

IV.

DISPOSITION

The order to administer involuntary medication pursuant to section 1370,

subdivision (a)(2)(B)(i)(I) is affirmed.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

CODRINGTON
J.

We concur:

McKINSTER
Acting P. J.

MILLER
J.