Filed 7/16/25  P. v. Wayfer CA1/3

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT
DIVISION THREE

| | |
|---|---|
| THE PEOPLE,<br>        Plaintiff and Respondent,<br>v.<br><br>BURL WAYFER III<br>        Defendant and Appellant. | A171939<br><br>(Contra Costa County<br>Super. Ct. No. 022401173)<br><br>**[REDACTED]** |

After declaring Burl Wayfer III incompetent to stand trial, the trial court issued an order authorizing involuntary medication as needed.  (Pen. Code, §§ 1368, 1370, subd. (a)(2)(B)(i)(I), undesignated statutory references are to this code.)  On appeal, Wayfer contends the court's denial of an evidentiary hearing before issuing the order deprived him of due process and equal protection.  He also argues that insufficient evidence supports the order.  We affirm.

### BACKGROUND[1]

In August 2024, Wayfer was charged with felony assault with a deadly weapon and misdemeanor resisting a peace officer.  (§§ 148, subd. (a)(1), 245, subd. (a)(1), 12022, subd. (b)(1).)  After the trial court expressed doubt about

---

[1] We granted Wayfer's request to file briefs under seal.  (Cal. Rules of Court, rule 8.47(c).)  We concurrently filed a sealed, unredacted version of the opinion — ordered to be sealed — as well as a public, redacted version.

1

his competence, it suspended the proceedings and appointed a psychologist to evaluate his mental status.

The clinical psychologist diagnosed Wayfer **[REDACTED]**. But at the time of the evaluation, Wayfer was refusing medication. **[REDACTED]** The psychologist opined he was not competent to stand trial because he did not appear to understand the nature of the criminal proceedings. And based on the high probability of harm to himself or others, she recommended involuntary medication to stabilize his psychiatric symptoms long-term and restore his competency.

The trial court found Wayfer incompetent to stand trial. It requested a recommendation for his placement to restore competency and scheduled a hearing regarding the administration of antipsychotic medication. A forensic psychologist interviewed Wayfer and reviewed his prior psychiatric and criminal history. **[REDACTED]**

At a November 2024 hearing, the trial court ordered Wayfer committed to the State Department of State Hospitals. His counsel objected to any involuntary medication, arguing the psychologists' reports lacked sufficient information regarding his capacity and dangerousness, and he had no issues indicating dangerousness to himself or others while in custody. Wayfer also asserted a right to an evidentiary hearing as a matter of due process. The court disagreed, noting the psychologists opined he lacked the capacity to make decisions regarding antipsychotic medication and is a danger to others. It also concluded **[REDACTED]** a due process or equal protection violation. Thus, it authorized the involuntary administration of antipsychotic medication as needed.

## DISCUSSION

Individuals have a protected liberty interest to be free from the involuntary administration of antipsychotic medication. (*Sell v. United States* (2003) 539 U.S.166, 178; *In re Qawi* (2004) 32 Cal.4th 1, 14.) "Pretrial detainees" have the same right unless they are dangerous to themselves or others " 'and the treatment is in [their] medical interest.' " (*People v. Lewis* 111 Cal.App.5th 1078, 1089–1090 (*Lewis*); *Washington v. Harper* (1990) 494 U.S. 210, 227 (*Harper*).) For defendants found incompetent to stand trial, courts must make certain basic decisions, including hearing and determining "whether the defendant lacks capacity to make decisions regarding the administration of antipsychotic medication."[2] (§ 1370, subds. (a)(2)(B)–(2)(C); *Lameed*, *supra*, 247 Cal.App.4th at p. 395.) When making this determination, the court must consider the opinions of psychologists or psychiatrists evaluating the defendant's competency to stand trial. (§ 1370, subd. (a)(2)(B).)

## I.

Wayfer contends the trial court violated his due process rights by denying him an evidentiary hearing before issuing its involuntary medication order. After independently reviewing this constitutional issue of law, we disagree. (*California Assn. of Dispensing Opticians v. Pearle Vision Center, Inc.* (1983) 143 Cal.App.3d 419, 426.) We instead agree with our colleagues

---

[2] The trial court must also determine a treatment setting, such as state hospital, private treatment facility, or outpatient treatment. (§ 1370, subds. (a)(1)(B)(i)–(iii), (a)(2)(A).) And "if the court finds the defendant has the capacity to make decisions regarding antipsychotic medication, it must then determine whether the defendant consents to the use of such medication." (*People v. Lameed* (2016) 247 Cal.App.4th 381, 396 (*Lameed*); § 1370, subds. (a)(2)(B)(iv)–(v).)

in *Lewis*, which rejected the same arguments Wayfer makes here; we discern no basis to depart from the reasoning in *Lewis*.

As a preliminary matter, Wayfer concedes the plain language of section 1370 does not require an evidentiary hearing, demanding nothing more than a decision based on the trial court's review of the competency report. But the court "retains the discretion to conduct an evidentiary hearing for the parties to adduce live testimony or cross-examine witnesses *where it finds such hearing warranted*." (*Lewis*, *supra*, 111 Cal.App.5th at pp. 1097–1098, italics added.)

Nevertheless, Wayfer contends that after balancing the factors to determine the process due before issuing an involuntary medication order — the private interest affected by government action; the state's interests; and risk of erroneous deprivation through existing procedures and probable value of additional or substitute safeguards — an evidentiary hearing is required.[3] (*Mathews v. Eldridge* (1976) 424 U.S. 319, 334–335; *Conservatorship of Christopher A.*, *supra*, 139 Cal.App.4th at p. 611.) Specifically, he argues the same procedures approved in *Harper*, *supra*, 494 U.S. at page 235 — notice, right to be present at an adversary hearing, and right to present and cross-examine witnesses in involuntary medication proceedings for convicted felons — and *Morrissey v. Brewer* (1972) 408 U.S. 471, 488–489 — written notice of violation, opportunity to be heard and present evidence, right to

---

[3] Though Wayfer states we must assess "the dignitary interest in informing individuals of the nature, grounds and consequences of the action and in enabling them to present their side of the story before a responsible government official" — a factor in *Conservatorship of Christopher A.* (2006) 139 Cal.App.4th 604, 611 — he fails to offer any analysis on this point, and we consider the point waived. (*Cahill v. San Diego Gas & Electric Co.* (2011) 194 Cal.App.4th 939, 956 [" 'We are not bound to develop appellants' arguments for them' "].)

confront and cross-examine adverse witnesses, a neutral and detached hearing body, and written statement of factual findings in a final parole revocation proceeding — must be afforded here.

Not so. There is no dispute that Wayfer has a significant protected liberty interest in avoiding the involuntary administration of antipsychotic medication. (*Harper*, *supra*, 494 U.S. at p. 221.) But critically, he has not demonstrated the risk of an erroneous deprivation through the procedures preceding the involuntary medication order. The court must consider the written reports of "a careful diagnostic evaluation by a licensed psychologist or psychiatrist." (*Lewis*, *supra*, 111 Cal.App.5th at p. 1097; *Mathews v. Eldridge*, *supra*, 424 U.S. at pp. 334–335 [acknowledging the " 'reliability and probative worth of written medical reports' "]; § 1370, subd. (a)(2)(B).) He had the right to be present, be represented by counsel, and present oral argument at the hearing. (*Harper*, at p. 235 ["allowing respondent to contest the staff's position at the hearing satisfies the requirement that the opportunity to be heard 'must be granted at a meaningful time and in a meaningful manner' "].) And although the evaluating psychologists did not testify, "the conclusions and recommendations of the mental health experts on the appropriateness of antipsychotic medication are likely more amenable to written than oral presentation," diminishing "the risk of error without oral testimony." (*Lewis*, at p. 1097; *Mathews*, at p. 345.) Thus, these procedures create little risk of an erroneous or arbitrary deprivation of his interest against involuntary medication. (*Lewis*, at p. 1097; *Morrissey v. Brewer*, *supra*, 408 U.S. at p. 481 ["due process is flexible and calls for such procedural protections as the particular situation demands"].)

Wayfer asserts — without support — that "vesting the trial court with unbridled discretion" to allow cross-examination increases the risk of an

5

erroneous deprivation.  We are unpersuaded.  (*Benach v. County of Los Angeles* (2007) 149 Cal.App.4th 836, 852 ["It is not our place to construct theories or arguments to undermine the judgment and defeat the presumption of correctness"].)  Nor is the value of the additional procedural protection of cross-examination in this context "beyond dispute," as Wayfer proclaims.  Aside from repeating general axioms regarding the right to confrontation in criminal cases, Wayfer fails to articulate how cross-examination in involuntary medication hearings reduces the risk of an erroneous deprivation.  Even *People v. Shepherd* (2007) 151 Cal.App.4th 1193 — cited by Wayfer and noting the " ' "absence of proper confrontation at trial 'calls into question' the ultimate integrity of the fact-finding process" ' " in a probation revocation proceeding — states the right is not absolute where witnesses (as here) can provide evidence through other means, such as letters and other documentary evidence that would not be admissible in an adversary criminal trial.  (*Id.* at p. 1199.)

Finally, we agree with *Lewis* that requiring cross-examination in all cases would significantly burden the state.  Inevitably, there would be attendant delays in hearings due to subpoenas and addressing legal and evidentiary issues with "potentially significant adverse consequences" — delays in restoring competency to stand trial, treatment within a reasonable period of time, and timely prosecution of defendants whose competence can be restored.  (*Lewis, supra*, 111 Cal.App.5th at p. 1099.)  To the extent that Wayfer identifies cases in which incompetent defendants were provided with evidentiary hearings before being involuntarily medicated, they do not "support the notion that requiring evidentiary hearings in all cases 'would not present too great of a fiscal or administrative burden.' "  (*Ibid.*; see e.g.,

6

*People v. McDuffie* (2006) 144 Cal.App.4th 880, 885; *People v. Coleman* (2012) 208 Cal.App.4th 627, 631–632.)

After balancing these factors, we conclude that due process does not require an evidentiary proceeding in every section 1370, subdivision (a)(2)(b) hearing regarding involuntary medication. Given this conclusion, we do not address Wayfer's assertion that the erroneous denial of an evidentiary hearing was prejudicial.

## II.

Wayfer relatedly argues the trial court violated his equal protection rights — treated him in an unequal manner compared to a similarly situated group without some justification — by denying him an evidentiary hearing. (*People v. Williams* (2024) 17 Cal.5th 99, 122; *People v. Guzman* (2005) 35 Cal.4th 577, 591–592; U.S. Const., 14th Amend.) We disagree.

At the outset, like *Lewis*, we assume without deciding that "individuals subject to involuntary medication under section 1370(a)(2)(B) . . . are similarly situated to, and are treated in an unequal manner from, . . . inmates subject to sections 2602 and 2603" — state prison and county jail inmates — and "individuals subject to section 1370 (a)(2)(C) and (D)" — those who consented to antipsychotic medication but subsequently withdrew consent or for whom medication was not initially ordered but later became necessary.[4] (*Lewis*, *supra*, 111 Cal.App.5th

---

[4] Relying on *State Department of State Hospitals v. J.W.* (2018) 31 Cal.App.5th 334 — which noted in passing that involuntary medication is permitted only following an evidentiary hearing — Wayfer argues he is similarly situated to other civilly committed individuals under the Lanterman-Petris-Short Act, Sexually Violent Predators Act, offenders with mental health disorders, those committed as not guilty by reason of insanity under section 1026, and state prisoners. (*People v. Barrett* (2012) 54 Cal.4th 1081, 1107.) We disagree. *J.W.*, based on cases addressing involuntary

at p. 1106; *People v. McKee* (2010) 47 Cal.4th 1172, 1202 [equal protection claim requires demonstrating "two classes that are different in some respects are sufficiently similar with respect to the laws in question"].) The latter two groups have the right to present evidence at a hearing. (§§ 2602, subd. (c)(7)(B), 2603, subd. (c), 1370, subd. (a)(2)(D)(i)(III).)

But we reject Wayfer's assertion that we must strictly scrutinize whether there is a constitutionally sufficient reason for different treatment, upholding it only if necessary to further a compelling state interest. (*Warden v. State Bar* (1999) 21 Cal.4th 628, 641.) Though there is a significant liberty interest in " 'avoiding the unwanted administration of antipsychotic drugs,' " it does not necessarily warrant strict scrutiny. (*Sell v. United States*, *supra*, 539 U.S. at p. 178; *People v. McKee*, *supra*, 47 Cal.4th at p. 1210, fn. 13 [each detail of a civil commitment program is not subject to strict scrutiny].) Rather, we assess his claim under a rational basis review. (*People v. Barrett* (2012) 54 Cal.4th 1081, 1109; *Lewis*, *supra*, 111 Cal.App.5th at p. 1106; *People v. Magana* (2022) 76 Cal.App.5th 310, 324 [indefinite commitment "affects the individual's fundamental right to liberty," but ensuring "meaningful access to the statutory right to a jury trial, while essential to the exercise of that right, does not affect a fundamental right"].)

Finally, Wayfer fails to demonstrate that there is "no rational relationship between the disparity of treatment and some legitimate governmental purpose" for providing state prison or county jail inmates

---

medication of these various groups, "addressed the *authority* of courts to order involuntary medication to pretrial detainees who have not yet been committed as a [sexually violent predator]; it did not purport to also decide the *procedures* that govern the exercise of that authority." (*Lewis*, *supra*, 111 Cal.App.5th at p. 1103.) Thus, there is no equal protection violation concerning these groups because they "are not being treated differently." (*People v. Castel* (2017) 12 Cal.App.5th 1321, 1326.)

under sections 2602 and 2603 an evidentiary hearing before the involuntary administration of antipsychotic medication. (*Heller v. Doe* (1993) 509 U.S. 312, 320; *People v. Turnage* (2012) 55 Cal.4th 62, 75 [challenger bears burden of "negat[ing] every possible, plausible grounds for the disputed disparity"]; *Lewis*, *supra*, 111 Cal.App.5th at p. 1101.) Pretrial confinement is intended to restore defendants to competency to allow criminal prosecution, thus requiring "evaluation and treatment on an expedited basis." (*Lewis*, at p. 1109.) Mentally ill prison inmates, who may be serving longer sentences and require long-term medication, do not have the same need. (*Ibid.*) For other defendants found incompetent to stand trial and found to have the capacity to refuse medication, or the court was unable to make a capacity determination under section 1370, subdivisions (a)(2)(C) and (D), those defendants " 'were already subject to a § 1370(a)(2)(B) determination' " — without a requirement for an evidentiary hearing. (*Lewis*, at p. 1110.) It is "rational for the Legislature to reserve those additional procedures" of an evidentiary hearing "for situations where circumstances have changed and there is a specific need to reevaluate an initial determination.' " (*Ibid.*)

Because there is a rational basis for the disparate treatment between these groups, Wayfer's equal protection claim fails.

## III.

Wayfer contends insufficient evidence supports the involuntary medication order. (*Lameed*, *supra*, 247 Cal.App.4th at p. 397 [reviewing order authorizing involuntary administration of medication for substantial evidence].) After reviewing the "entire record in the light most favorable to the judgment to determine whether it contains substantial evidence—that is, evidence that is reasonable, credible, and of solid value—from which a

9

reasonable trier of fact could find the defendant" required medication, we disagree. (*People v. Maciel* (2013) 57 Cal.4th 482, 514–515.)

Relevant here, section 1370 authorizes involuntary antipsychotic medication upon a finding the defendant lacks the capacity to make decisions regarding antipsychotic medication. (§ 1370, subd. (a)(2)(B)(i)(I)).) Specifically, the court must determine whether in the absence of medication, "it is probable that serious harm to the physical or mental health of the patient will result." (*Ibid*.) Probability of serious harm requires evidence "the defendant is presently suffering adverse effects to their physical or mental health, or the defendant has previously suffered these effects as a result of a mental disorder and their condition is substantially deteriorating." (*Ibid*.) An involuntary medication order is also authorized upon a finding the defendant is "a danger to others" — "the defendant has inflicted, attempted to inflict, or made a serious threat of inflicting substantial physical harm on another while in custody" or resulting in defendant being taken into custody — and as a result of the defendant's mental disorder or defect, the defendant has a demonstrated danger of inflicting substantial physical harm on others. (§ 1370, subd. (a)(2)(B)(i)(II).) Upon finding *any* of these conditions true, the court must issue an order authorizing involuntary antipsychotic medication for no more than one year. (*Lameed, supra*, 247 Cal.App.4th at pp. 396–397.)

Substantial evidence supports the trial court's order. (§ 1370, subd. (a)(2)(B)(i)(I); *Lameed, supra*, 247 Cal.App.4th at p. 399.)
**[REDACTED]**

The psychologists' reports further established Wayfer's **[REDACTED]** required medical treatment with antipsychotic medication. (§ 1370, subd. (a)(2)(B)(i)(I); *Lameed, supra*, 247 Cal.App.4th at p. 400.)

10

**[REDACTED]**  (*People v. Garcia* (2024) 99 Cal.App.5th 1048, 1055 [relying, in part, on competency reports noting antipsychotic medication is appropriate to treat defendant's mental disorder].)

Finally, the record reflects that if Wayfer's mental disorder is not treated with antipsychotic medication, it will result in serious physical or mental harm to him.  (*Lameed*, *supra*, 247 Cal.App.4th at p. 399.) **[REDACTED]**  (*Id.* at p. 401 [probability of serious harm demonstrated by defendant presently suffering adverse effects to mental health].) **[REDACTED]**  (*Id.* at p. 400 [relying in part on psychologist's opinion that delusions and symptoms would persist in the absence of medication].)

On this record, substantial evidence supported the trial court's conclusion that Wayfer lacked capacity to make medication decisions **[REDACTED]**.  Given this conclusion, we need not address his argument that there was insufficient evidence supporting the finding that he presented a danger to others.  (§ 1370, subd. (a)(2)(B)(ii)(II); *People v. Garcia*, *supra*, 99 Cal.App.5th at p. 1054 ["A trial court is required to permit involuntary administration of antipsychotic medication if it finds one of [the] three sets of conditions to be true"].)

## DISPOSITION

The order is affirmed.

_____
RODRÍGUEZ, J.

I CONCUR:


_____
PETROU, J.


A171939; *People v. Wayfer*

**TUCHER, P. J., Concurring in the judgment:**

"Contrary to appellant's characterization, he was never denied an evidentiary hearing—he simply chose not to offer any evidence, seek to examine any witnesses, or even move for a continuance based on a proffer that he *could* offer evidence or challenge the evidentiary basis for the [involuntary medication order (IMO)]." The Attorney General urges us to affirm on that basis, and I would take that path here.

The factual record bears out the Attorney General's characterization. At a brief hearing on October 15, 2024, the trial court set another hearing three weeks hence to address placement for competency restoration and involuntary medication. Noting Dr. Stephanie Williams's opinion that Wayfer "meets criteria for involuntary medication on both capacity and dangerousness grounds," the court said it "will take argument on that" at the November 5 commitment hearing. Wayfer offered no objection to this plan and made no request to call witnesses at the forthcoming hearing.

At the November 5 hearing, the court began by committing Wayfer to the Department of State Hospitals, then repeated its observation about Dr. Williams's opinion and its invitation for argument. Through counsel, Wayfer articulated the view that information in the report was "insufficient on the issue of capacity and dangerousness," and that due process entitled him to an evidentiary hearing. But Wayfer's counsel acknowledged "the Court's position . . . that this is the date for a hearing," and counsel neither requested permission to call a witness nor asserted good cause for a continuance to accommodate witness scheduling. Indeed, counsel mentioned no particular witness or evidence she wanted to present.

The trial court then found "that this is the appropriate time and manner of hearing" and concluded, without explanation, that "there [were] no

1

due process or equal protection violations" occurring.  Neither the trial court nor the prosecution asserted, at the October 15 or November 5 hearing, that Wayfer did not have the right to call a witness to testify on issues relevant to the proposed IMO.  Nor would I so hold in this case.

My reluctance to rest our decision on the constitutional ground broken in *People v. Lewis* (2025) 111 Cal.App.5th 1078 (*Lewis*) stems in part from a desire to avoid constitutional issues we need not reach.  It is a " ' "well-established principle that [appellate courts] will not decide constitutional questions where other grounds are available and dispositive of the issues of the case." ' " *Santa Clara County Local Transportation Authority v. Guardino* (1995) 11 Cal.4th 220, 230.

I also hesitate to suggest that, if Wayfer had timely requested to cross-examine Dr. Williams, the trial court could properly have declined that request.  Cross-examination has been described "as ' "the greatest legal engine ever invented for the discovery of truth," ' " and the United States Supreme Court "has declared:  'Cross-examination of a witness is a matter of right.' " (*Fost v. Superior Court* (2000) 80 Cal.App.4th 724, 733–734.)  Indeed, "[w]here a witness refuses to submit to cross-examination, or is unavailable for that purpose, the conventional remedy is to exclude that witness's testimony on direct." (*Id.* at p. 735; see also 3 Witkin, Cal. Evidence (6th ed. 2025) Presentation at Trial, § 250; *People v. Price* (1991) 1 Cal.4th 324, 421, superseded by statute on another ground as stated in *People v. Hinks* (1997) 58 Cal.App.4th 1157, 1161; *Washington v. Harper* (1990) 494 U.S. 210, 228, 235 [approving procedures for IMO that include cross-examination].)  I acknowledge that the *Lewis* court anticipated a sort of cross-examination by declaration (*Lewis, supra*, 111 Cal.App.5th at p. 1096 [" 'counsel is free to contact the evaluating physicians . . . for additional information and reports,

2

and provide such reports to be considered' "]), and it may be that this procedure satisfies the demands of due process, but I would avoid deciding that weighty issue here.

As for the substantial evidence challenge, I reject that challenge for the same reason the majority does—because substantial evidence in the form of expert opinion supports a finding that Wayfer lacked capacity to make medication decisions and risked serious harm to himself if he remained unmedicated.

I accordingly join my colleagues in affirming the involuntary medication order.

_____
Tucher, P. J.

3